## GEORGE B. WILSON, Respondent, v. EMMET L. WILSON, Appellant.

### Kansas City Court of Appeals, January 8, 1906.

1. **CONTRACTS: Construction: Form: Substance.** In interpreting a written contract, the dominating factor is the mutual intention of the parties; and while the form should be considered, when form and substance conflict, the latter controls.

2. ———: **Vendor and Vendee: Deed: Merger.** Contracts between vendor and vendee, relating to the executory acts necessary to complete the sale of the land, are merged in the deed, the acceptance of which completes the performance and is conclusive evidence of the real contract between the parties.

3. ———: ———: ———: ———: **Other Matters.** Where the contract embraces other undertakings beside those relating to the conveyance of real estate the contract is not to be classed as a real estate undertaking; and the delivery of the deed cannot effect the validity of the original contract nor prevent the execution of other matters of equal dignity.

4. ———: ———: ———: ———: ———. Where a contract in form provided for the sale and conveyance of real estate but was in fact an exchange of real estate for merchandise which the vendee of the land agreed to deliver to the vendor before the latter was to deliver his deed, thereby becoming the latter's creditor, the rule of merger extinguishing the prior contracts does not apply.

5. ———: ———: ———: ———: **Consideration: Action.** The contract provided for the exchange of merchandise for real estate, the deed to be delivered when the vendor accepted the merchandise and the price thereof was fixed. The contract further provided that the land was to carry a certain incumbrance with interest. There was a further incumbrance for commissions which amounted to two per cent on the incumbrance. The vendor tendered a deed containing the recital, "subject to an incumbrance, etc., and unpaid commission on said loan," which after parley and protest the vendee accepted. *Held*, this recital did not impose upon the vendee the additional burden of the commission but only permitted its lien to run with the land and the recital was without consideration, and when the commission was paid by the vendee to protect his title he could recover the same from the vendor.

115 app—41

6. ———: ———: ———: ———: Interest. Nor can the commission be regarded as interest within the meaning of that term in the original contract of the parties.

7. PLEADING: Petition: Former Appeal. The opinion on a former appeal that the petition stated a cause of action is affirmed.

Appeal from Worth Circuit Court.—*Hon William C. Ellison*, Judge.

AFFIRMED.

*Peery & Lyons* and *Kelso & Kelso* for appellant.

(1) The general principles of the law of contracts of sale of real estate while the contract is still executory, recognize and enforce the right of a purchaser to a title clear of defects and incumbrances; "but when the contract has been consummated by the execution and delivery of a deed, the terms of the deed fill the measure of the rights of the parties and the contract merges in the deed." Wheeler v. Ball, 26 Mo. App. 443; Matheny v. Stewart, 108 Mo. 73; Herryford v. Turner, 67 Mo. 296; Branckinan v. Leighton, 67 Mo. App. 245; Krepp v. Railway, 99 Mo. App. 94; Rawle on Cov. (5 Ed.), sec. 320; Dart on Vendors, 734; Ellis v. Lackett, 100 Ga. 719; Jones v. Wood, 16 Pa. St. 25; Carter v. Beck, 40 Ala. 599; Davenport v. Whisler, 46 Ia. 287; Davis v. Clark, 47 N. J. L. 338; Gibson v. Richart, 83 Ind. 313; Horner v. Lowe, 159 Ind. 406; Bryan v. Swain, 56 Cal. 616; Shontz v. Brown, 27 Pa. St. 123; Griswald v. Eastman, 51 Minn. 189; Young v. Lego, 36 Wis. 394; Leffel v. Piatt, 126 Mich. 443; Clifton v. Jackson Iron Co., 74 Mich. 183; s. c., 16 Am. St. Rep. 621. (2) The deed read in evidence in the case at bar was the last step in the transaction between the plaintiff and the defendant. It was the latest written contract between them; it covered, in plain and explicit language the matters which are the subject of this suit, to-wit, the unpaid commission notes secured by the second mortgage. The rights

of the parties must be measured and determined solely by the last expression of their agreement. Munford v. Wilson, 15 Mo. 540; Chrisman v. Hodges, 75 Mo. 413; Tuggle v. Callison, 143 Mo. 536; Pressed B. Co. v. Barr, 76 Mo. App. 380; McClurg v. Whitney, 82 Mo. App. 630; Howard v. Scott, 98 Mo. App. 509. (3) That there was an acceptance of the deed from the defendant by the plaintiff is not open to question; 9 Am. and Eng. Ency. Law (2 Ed.), 161; Horner v. Lowe, 159 Ind. 406; 2 Herman Estop., sec. 1028, p. 1156; Fox v. Windes, 127 Mo. 502; 2 Herman on Estop., sec. 1049, p. 1176; 2 Herman Estop., sec. 1050, p. 1177. (4) It follows from what has been said in the foregoing paragraphs that the original or preliminary contract of sale of the land (upon which the plaintiff relied in this case for recovery) became, after the delivery of the property and the execution and delivery and acceptance of the deed, *functus officio* for any purpose.

*Hudson & DuBois* for respondent.

(1) This court on the former appeal held that plaintiff had made out a prima facie case, and was entitled to go to the jury, and now to sustain appellant's present position, is to reverse this former holding. The decision then rendered is *res adjudicata* of the present appeal. Printing Co. v. Protective Association, 81 Mo. App. 467; Baker v. Railroad, 147 Mo. 152; Senate v. Railway, 57 Mo. App. 225; Stilwell v. Glascock, 47 Mo. App. 554; Elevator Co. v. Cleary & Hamilton, 77 Mo. App. 302; R. S. 1899, sec. 864; Kansas City v. Madsen, 93 Mo. App. 146; Hayes v. Bunch, 91 Mo. App. 471; Wolfe v. Supreme Lodge, 160 Mo. 685; Slater v. Supreme Lodge, 88 Mo. App. 182; Hill v. Drug Co., 140 Mo. 439. (2) If there is any merit whatever in defendant's present contention, i. e., that the acceptance by plaintiff of the warranty deed, defeats his recovery in this action, except as to certain interest, which we think under the facts in this case is clearly not the law, he should have

called the matter to the trial court's attention by proper instructions and in his motion for a new trial, all of which he failed to do, and will not now for the first time be permitted to do so, in this court. State v. Cantlin, 118 Mo. 111; Horgan v. Brady, 155 Mo. 668. Hamilton v. Scull's Admr., 25 Mo. 165; Sash & Door Co. v. Gough, 81 Mo. App. 444. (3) So we conclude that in any event the judgment of the trial court is for the right party and should be affirmed. R. S. 1899, sec. 865; Barkley v. Cemetery Ass'n, 153 Mo. 317; Earney v. Modern Woodmen of America, 79 Mo. App. 385. (4) As before stated, the present judgment was obtained by plaintiff in strict conformity to the former decision of this court. R. S. 1899, sec. 867; Stilwell v. Glascock, 47 Mo. App. 557; Mooneyham v. Cella, 91 Mo. App. 265; Bank Note & Lith. Co. v. Fennemore Ass'n, 84 Mo. App. 233.

JOHNSON, J.—The cause of action pleaded in the petition is in the nature of *assumpsit* and is for the recovery of an alleged unpaid portion of the purchase price of a stock of merchandise sold by plaintiff to defendant. The case was here once before and is reported in 106 Mo. App. 501. It was reversed and remanded for reasons that do not concern us. Following its disposition under the former appeal, defendant filed an amended answer containing several affirmative defenses, none of which needs be stated, as no question touching the sufficiency of that pleading is before us and the averments furnish a sufficient foundation to support the evidence offered. A statement of the facts in evidence will disclose the nature of the issues tendered by the pleadings.

Plaintiff owned a stock of goods in a town in Worth county and defendant owned a farm of three hundred and fifteen acres in Macon county. The parties met in Bucklin and, with the assistance of an agent (whose name is not made clear, nor is it important); entered into a written contract prepared by the agent and which is as follows:

"Bucklin, Mo., October 21, 1901.

"This agreement made and entered into this day by and between Emmet L. Wilson, of Albany, Mo., party of the first part, and G. B. Wilson, of Worth, Worth county, Mo., party of the second part, Witnesseth: That the party of the first part has this day sold to the party of the second part, his farm of about 315 acres known as the Cherry farm, in sections 34 and 35 in Walnut Creek township, No. 59, of range 16, Macon county, Mo., and for the consideration of ten thousand five hundred dollars and is to furnish clear abstract of title excepting an incumbrance of $4,000 to be assumed by the said second party. The party of the first part is to take in exchange therefor from the party of the second part, a stock of general merchandise, consisting of dry goods, groceries, boots, shoes, hardware, furniture and such other goods as may now be in stock, situated in large storerooms, size 50x80 in Worth, Mo. Said stock to be invoiced at first cost. Said goods bought from Mr. McRennels at the same price bought for. Also the fixtures at the same price taken for when bought by the said second party. Said first party to give possession of farm January 1, 1902, or sooner if, also to pay interest on debt to that date. The stock of goods to be invoiced, commencing October 31, 1901, or sooner. (Signed)

(Seal)                              "E. L. WILSON,
(Seal)                              "G. B. WILSON."

Pursuant to this contract, the goods were inventoried and found to be of the value of $7,266.77. Under the supposition that the amount of the incumbrance upon the land was $4,000, the value of defendant's interest therein was fixed by the contract at $6,500, which was $766.77 less than the agreed value of the goods. Upon the completion of the valuation of the merchandise, delivery thereof was made by plaintiff to defendant and accepted, and defendant continued the business of a retail merchant, to that time conducted by plaintiff. Defendant,

at different times, made payments to plaintiff of different sums for application upon the amount due plaintiff on account of the excess in the value of the goods over that of defendant's interest in the land, and thereby extinguished that liability to plaintiff save as to two items, one of which is the real subject of dispute.

The first item relates to the unpaid interest that accrued on the real estate loan January 1, 1902, and which it is conceded defendant, under the contract, was to pay. Defendant testified that this item was included in a settlement made by the parties and paid, but plaintiff testified that no settlement was made and the item was not paid, and the issue of fact thus raised was properly presented to the jury in the instructions given, decided adversely to defendant, and therefore may be dismissed from further consideration.

The real controversy between the parties developed from a commission loan of $366.67, secured by a deed of trust covering the land involved in the trade. The incumbrance upon the land, in fact, consisted of two trust deeds. The first secured a loan of $3,500, that would not mature until some time in 1907, and bore interest at the rate of five per cent per annum, and the second secured another loan of $500 and, in addition, a commission loan that represented the compensation of the loan agents for services in the procurement of the first loan of $3,500. Defendant contends that, as this commission loan in fact represents interest on the first loan at the rate of two per cent per annum during its maturing period, it should be treated as interest and, as the sum in dispute represents interest on the loan that had not accrued on January 1, 1902, it should be assumed and paid by plaintiff.

Defendant conceded that the contract would not sustain him in this position and sought to overcome this obstacle by pleading and attempting to prove that the contract did not express the real intention of the parties and was signed by him under mistake. This issue

also was properly sent to the jury as one of fact, determined in favor of plaintiff and, therefore, is now out of the case.

With the real facts known to both parties, defendant, sometime after he received possession of the goods, tendered a warranty deed to plaintiff conveying the land. Following the description of the property and preceding the *habendum* clause, the following provision was inserted: "This deed is made subject to an incumbrance of four thousand dollars and unpaid commission on said loan." Plaintiff for a long time refused to accept this deed on account of the reference made therein to the commission loan, claiming that it was at variance with the agreement expressed in the contract; and an animated dispute ensued, that continued for some months, each party contending that the duty of clearing the land of the lien of the commission loan devolved upon the other, or to state it in another way, defendant claimed that plaintiff should assume the payment of the commission loan and receive the equity of redemption in the land as a payment of $6,500 upon the purchase price of the goods, while plaintiff insisted that, if he assumed the payment of that loan, the amount thereof should be deducted from the value of the equity of redemption. Finally, plaintiff feeling compelled to take what he could get, in order to avoid the risk of greater loss, accepted the deed under protest and with the assertion that he did not accept it in full satisfaction of the remainder due him upon the purchase price of the goods. Afterwards, plaintiff paid the loan. These are facts in evidence bearing the approval of the verdict rendered and that serve to elucidate the question of law presented for our solution. A statement of other evidence and issues would be extraneous to the case as it now stands. Plaintiff recovered judgment for the full amount prayed.

Defendant's position here, in some respects, is hardly consistent with that occupied by him in the trial court, but in the view we have of the case, we will pass

by that point and deal with him upon the ground he now chooses. The reasons urged in his argument for a reversal of the judgment may thus be stated:

(1) The action is in fact, though not in form, for the recovery of the amount paid by plaintiff in satisfaction of the commission loan and not for the recovery of a part of the purchase price of the merchandise.

(2) The written contract was one for the sale of real estate and by its express terms required plaintiff to pay interest on the loan after January 1, 1902.

(3) The interest upon the loan of $3,500 was fixed at the rate of seven per cent per annum, of which five per cent was to belong to the holder of the loan and two per cent as commission to the agents, who negotiated it. Therefore, the commission loan was interest, and the portion of it unearned on January 1, 1902, should by the express terms of the contract be paid by plaintiff.

(4) Notwithstanding this construction of the written contract may be rejected, nevertheless, being one for the sale of real estate and executory, the contract was finally executed by the delivery and acceptance of the deed and became extinguished by merger into the latter instrument, which by its express terms imposed upon the plaintiff the burden of paying the commission loan.

In our discussion of these questions, we will consider the controlling principles in the order of their logical sequence. In the interpretation of every written contract, the dominating factor is the mutual intention of the parties who made it. This is to be collected from the words of the instrument itself and the facts and circumstances that gave it birth. The form of the instrument should be considered as being, in some degree, expressive of the intention, but when form and substance conflict, the latter controls.

The form of the written contract before us is that of an agreement for the sale of real estate, the distinctive feature of which class of contracts is the imposition up-

Wilson v. Wilson.

on the vendor of the duty to perform the executory acts necessary to the completion of the sale. As a general rule, the acts to be performed by the vendor relate to the production of documentary evidence to satisfy the mind of the vendee of the validity of the title claimed by the vendor and after this the execution and delivery of a deed conveying the title. The acceptance of the deed completes the execution of the contract, and, save in some excepted cases, the accepted deed is the final conclusive evidence of the real contract made by the parties and all prior verbal or written agreements are extinguished by it, not, however, on account of any peculiar sanctity inhering in a deed, but because it is the last written expression of their agreement made by the parties.

But when, as in this case, the executory contract embraces other agreements, undertakings and obligations in addition to those relating to the conveyance of real estate and imposes upon both parties the duty of performing executory acts, the contract should not be classified with those exclusively pertaining to the conveyance of real estate, and the delivery of a deed made pursuant to the terms of such contract is the execution of but one of several executory acts of equal dignity and, therefore, cannot in any way affect the vitality of the original contract because it does not purport to deal with the entire subject-matter, but only with a part thereof. The deed may contain covenants and agreements that change or abrogate those of the executory contract, but in the absence of such special provision the contract is unaffected by the principle of merger and remains unimpaired.

Turning now to the contract before us, we find that the most important subject from the standpoint of value embraced within its scope was the stock of merchandise. Plaintiff was charged with the obligation to assist in the ascertainment of its real value in the manner

provided and then to surrender its possession to defendant. In reality, the contract contemplated that defendant should receive this personal property, that exceeded in value his equity of redemption, before the obligation devolved upon him to convey the real estate. In fact, the contract was one for the exchange of properties with the obligation imposed upon plaintiff to fully execute the conditions required of him before reciprocal duty devolved upon defendant. To state it differently, plaintiff was, in effect, required to place himself in the position of a creditor of defendant to the extent of the value of the merchandise delivered before defendant was bound to discharge the purchase price of the goods by the delivery of the title to his equity of redemption at its agreed value and the payment of the remainder in money. It would be a perversion of the doctrine of merger and require an interpretation thereof not sustained by any of the authorities, to which we have been cited, to hold it applicable in this case.

Nor can it be said that by express agreement appearing in the deed the parties modified the original contract to the extent of imposing the obligation upon plaintiff to pay the commission out of his own pocket and at his own loss. The fact that the conveyance was made subject to the commission loan, without more, did not imply either the assumption of the debt by plaintiff or his agreement that its amount should not be deducted from the value placed upon the equity of redemption. The most that can be said for it is that it permitted the lien to continue to run with the land, but it does not follow that plaintiff's assent to such disposition of the lien would carry with it his agreement to abandon the stipulation in the contract, that imposed upon defendant the burden of any excess of incumbrance above the sum of $4,000. This requirement could not be abrogated except by the express agreement of plaintiff based upon a sufficient consideration, neither of which appears. When the deed was tendered, defendant was in full enjoyment of

the fruits of the contract. Plaintiff had done everything required of him and stood with extended hand waiting for his pay. Defendant, secure in the possession of both land and goods, with everything to gain and nothing to lose, sought to gain advantage from his fortunate position by imposing terms outside the contract. He thereby committed a breach of the contract and put himself in the wrong. The concession that the thinks he wrung from plaintiff under such hard conditions must fall for lack of consideration, if for no other reason. The extent of his obligation became fixed by plaintiff's performance and could not be lessened without a new consideration. When a contract is fully performed by one of the parties, an offer of part performance by the other is no consideration for the waiver of full performance.

The contention that the commission loan should be treated as representing interest on the $3,500 loan and its payment required of plaintiff under the terms of the contract is likewise devoid of the support of sound reason. It may be true that the amount of the agents' commission was computed on the basis of an annual charge of two per cent on the amount of the loan, but it was none the less compensation for the services of the agents and not for the use of money. The execution and delivery of the commission notes to the agents created a liability separate and distinct from that of the loan.

On the former appeal, we dealt with the question of the sufficiency of the cause of action asserted in the petition to sustain a recovery under the facts disclosed, and we now reaffirm what was then said upon that subject. Some criticisms are made of the instructions given, but, under the views expressed, it will be apparent that none of them is well founded.

The judgment is affirmed. All concur.