[No. 9899.    Department Two.    April 8, 1912.]

E. H. BAKER, *Appellant*, v. J. N. SHAW *et al.*, *Respondents.*[1]

SALES—OPTIONS—WITHDRAWAL. An option to buy, although given without consideration, cannot be withdrawn after its acceptance within the time fixed.

SALES—OPTIONS—ACCEPTANCE—PARTIAL PAYMENT. Where an option to buy stock was accepted, and the parties entered into a supplemental agreement whereby the buyer agreed to make a deposit in a specified bank, the deposit is shown to be a partial payment by the provision "balance due on inventory to be paid when said inventory book is extended and footed" by the seller.

SALES — CONTRACTS — CONSTRUCTION—OPTIONS—ELECTION. Under acceptance of an option to buy stock, which also included an option on certain bills receivable at a certain per cent of their face, and a supplemental agreement whereby the seller was to make an inventory of the accounts, the buyer is not called on to exercise his election to take the accounts until the inventory was completed and submitted.

SALES—CONTRACTS—CERTAINTY—PRICE—AGREEMENT TO SELL. Upon an agreement to sell corporate stock and personal property for a stipulated price, without reference to any liabilities, it will be presumed that no liabilities existed, or that they were to be deducted from the agreed price, and the contract is not void for uncertainty in failing to mention the liabilities.

[1]Reported in 122 Pac. 611.

Appeal from a judgment of the superior court for King county, Albertson, J., entered February 21, 1911, upon findings in favor of the defendants, dismissing an action on contract, after a trial to the court.   Reversed.

*Trefethen & Grinstead,* for appellant.

*Howard Waterman* and *Smith & Cole,* for respondents.

CROW, J.—Action by E. H. Baker against J. N. Shaw and Gertrude M. Shaw, his wife, to recover damages for an alleged breach of contract.   The only issue tried was whether there was any contract.   The trial judge held there was not, and without admitting evidence of damages, dismissed the action.   The plaintiff has appealed.

The following findings were made by the trial judge:

"(2)   That on October 29, 1909, and at all times thereafter up to and including the time of said trial, the defendant J. N. Shaw was the owner of all but two shares of the capital stock of the Commercial Importing Company, Inc., a corporation organized and existing under the laws of the state of Washington; and was the president and manager of said corporation.

"(3)   That on October 30, 1909, the defendant J. N. Shaw gave to the plaintiff a written option to purchase the capital stock of said Commercial Importing Company, Inc.; that there was no consideration whatever for said option; and that said option was in the following words and figures:

Seattle, Washington, October 30, 1909.

For the consideration of one dollar in hand paid, the receipt whereof is acknowledged, J. N. Shaw hereby gives to E. H. Baker, for the space of time of thirty days, an option for the purchase of all the capital stock and assets of the Commercial Importing Company in the following manner:

All merchandise of the Commercial Importing Company at invoice cost.

All fixtures and machinery at 75 per cent of cost.

All coffee urns at 66 2-3 per cent of cost.

And an option on any accounts receivable at 75 per cent of its face value.

In addition said Baker shall pay five thousand dollars for the good will of said business of said Commercial Importing Company

and said Shaw agrees that he will not carry on the coffee business in the state of Washington for the term of two years from date without the permission of said Baker. (Signed) J. N. Shaw.

The foregoing conditions are hereby accepted on this 30th day of October, 1909. (Signed) E. H. Baker.

"(4)    That on November 27, 1909, the plaintiff stated to the defendant, J. N. Shaw, that he was ready, willing and able to comply with all of the terms set forth in said option; and that on said date, the plaintiff and said defendant signed the following written instrument, relating to the option set out in the preceding paragraph:

November 27, 1909.

Inventory to be taken Sunday, November 28, 1909. The sum of $5,000 to be deposited by Baker in Scan.-Am. Bank, at 1:30 o'clock p. m., November 29, '09; Shaw to deposit capital stock at said bank at same time. Balance due on inventory to be paid when said inventory book is extended and footed by J. N. Shaw all according to terms of option between us.

The matter of lease on location at 1012 Western Avenue, Seattle, shall be taken up by the parties, or their attorneys, and if no agreement to compensation therefor can be reached, then Everett Smith, Esq., shall be appointed as arbitrator to decide the matter and his decision shall be final.

(Signed) J. N. Shaw.    (Signed) E. H. Baker."

Appellant requested the following findings, which were refused:

"(2)    That on October 29, 1909, and at all times thereafter up to and including the time of said trial, the defendant J. N. Shaw was the owner of all but two shares of the capital stock of the Commercial Importing Company, Inc., a corporation, organized and existing under and by virtue of the laws of the state of Washington, one of said shares being in the name of his wife, and another in the name of a friend, for the purpose of legally complying with the laws and statutes of the state of Washington, that trustees of the company should hold stock therein, and at all such times said defendant, J. N. Shaw, was the president and manager of said corporation; and his wife held the other offices in said corporation . . .

"(3)    That on the 30th day of October, 1909, the plaintiff and the defendant J. N. Shaw made and entered into an agreement for the sale by the defendant J. N. Shaw to the plaintiff, of all of the capital stock of said Commercial Im-

porting Company, Inc., a corporation, said agreement being in words and figures as follows: [Here follows copy of the agreement of October 30, 1909.]

"(4)   That on November 27, 1909, the plaintiff stated to the defendant, J. N. Shaw, that he was ready, willing and able to comply with all of the terms set forth in said option; and that on said date, the plaintiff and said defendant signed the following written agreement, relating to the option set out in the preceding paragraph, said writing being a supplemental agreement to the preceding agreement, and being in words and figures as follows, to wit: [Here follows the supplemental agreement of November 27, 1909.]

"(5)   That the plaintiff has been ready, willing and able at all times to comply with all terms and conditions made and designated in said agreement of October 30, 1909, and said supplemental agreement of November 27, 1909, and in accordance with the terms of said supplemental agreement, aforesaid, the plaintiff herein deposited with the Scandinavian-American Bank, as stipulated in said supplemental agreement, aforesaid, the sum of five thousand dollars, therein required, and had on hand, at all times subsequent to the said 27th day of November, 1909, in readiness to pay for such capital stock aforesaid, all sums of money requisite and necessary to pay for such capital stock according to the terms of said agreements aforesaid, and the plaintiff has been ready, willing and able to faithfully perform and execute all of the terms and conditions; that the defendant has at all times refused to comply with, to carry out, or to perform any of the terms or conditions of either of said agreements on his part to be done and performed. . . .

"(6)   That the said agreements were made by the defendant J. N. Shaw as agent and representative of the community composed of J. N. Shaw and Gertrude M. Shaw, his wife, and that said sale of said capital stock of said corporation was for the benefit of said community; that all acts of said J. N. Shaw and the failure and refusal to carry out the terms of said agreement by the said J. N. Shaw, were acquiesced in and ratified by said Gertrude M. Shaw, his wife."

Construing the written instruments above set forth, the trial judge sustained respondents' contention that the first instrument was given without consideration and was an option which respondents were entitled to withdraw, and did with-

draw, and that no contract existed. The record is too lengthy
to permit a detailed statement of the evidence. We find it
sufficient to show that, on November 27, 1909, appellant no-
tified respondents of his acceptance of the option and his elec-
tion to purchase; that at all times thereafter he was ready,
willing and able to perform the contract; that the supple-
mental agreement was then made; that in compliance there-
with he deposited $5,000 in the bank to be applied on the pur-
chase money; that respondents did not complete or extend the
inventories, but refused to deliver them to appellant unless he
first paid a large sum arbitrarily fixed by them; that they
made no detailed statement of bills receivable, and that they
constantly interposed captious objections to prevent per-
formance by appellant. Appellant contended that the orig-
inal instrument was a contract of sale, while respondents con-
tended it was an option only. It is conceded that no consid-
eration passed from appellant to respondents when it was exe-
cuted. An option may be granted with or without considera-
tion. If a valuable consideration passes from the person to
whom the option is given, the party giving it cannot with-
draw his offer within the agreed period of time over which the
option is to extend. 'On the other hand, if the option be
given without consideration, it may be withdrawn at any
time prior to its acceptance and a tender of performance, but
not thereafter, as such acceptance will convert it into a bi-
lateral or mutual contract, binding upon both parties. 3
Page, Contracts, § 1616.

The oral evidence and supplemental agreement unquestion-
ably show that the option was accepted by appellant prior
to any withdrawal by respondents; that from and after No-
vember 27, 1909, a valid contract existed between the parties,
and that on November 29, 1909, appellant deposited $5,000
as agreed. Some question is raised by respondents as to the
purpose of this deposit. They insist that it was of no benefit
to them, as it was not agreed upon as their liquidated damages
should appellant refuse to further perform the contract. Its

manifest purpose was to afford evidence of appellant's good
faith, and to serve as a partial payment on the contract.
That it was to be a partial payment is apparent from the fol-
lowing language of the supplemental agreement, "Balance
due on inventory to be paid when said inventory book is ex-
tended and footed by J. N. Shaw." That is, that the re-
mainder of the purchase price over and above the partial
payment of $5,000 was to be paid by appellant. Respond-
ents, however, breached the contract by failing to deposit
the stock or complete the inventories.

Respondents further contend that appellant never exer-
cised any election relative to taking the bills receivable.
Their own testimony was that he did declare his election not
to take them. But in any event, he was under no obligation
to announce his election in that regard until the inventories
had been completed and submitted to him as contemplated.
Appellant was to purchase all of the capital stock which was
owned by respondents. The option and supplemental agree-
ments announced a rule for fixing its value. Appellant did
every act that could be required of him prior to his receipt
of the inventories which respondents agreed to complete and
submit to him. If appellant elected not to take the bills re-
ceivable, they would become respondents' individual property,
and would not pass to appellant as assets of the corporation.
The contract admits of no other interpretation, and the evi-
dence of the parties without dispute shows that they so con-
strued it.

Respondents further insist the contract was incomplete,
vague and uncertain, because it did not expressly provide
for any disposition of the liabilities of the corporation, but
failed to state whether they were to be deducted from the in-
ventories in fixing the contract value of the stock, or whether
they were to be assumed by appellant. No express reference
to the liabilities appears in the written instruments, but no
uncertainty exists on that account. If A., being in possession
of property, contracts to sell the same to B. for a stipulated

price, it will be presumed, in the absence of any agreement to the contrary, that the property is to be conveyed to B. free from any liens, incumbrances, or liabilities. Williston, Sales, § 218; *Clevenger v. Lewis,* 20 Okl. 837, 95 Pac. 230, 16 L. R. A. (N. S.) 410.

In this action, the parties agreed upon a method for ascertaining the value of the stock to be sold, without making any reference to liabilities. It was therefore to be presumed that none existed, or that if they did exist, they would be deducted from the total valuations stated in the inventories. The parties themselves, when discussing the inventories, at all times agreed that the liabilities were to be thus deducted. We therefore find no merit in this contention. The parties were bound by their own construction of the contract. While taking the inventories, some dispute arose as to the prices of certain items which we need not mention. All of these matters were temporarily passed with the understanding that the respondent J. N. Shaw was to complete the inventories, make his footings, and submit them to appellant. This he never did. Appellant, although insisting to some extent on what he regarded as his legal rights, continually evinced a willingness to make concessions on all these items, rather than lose his purchase. The record convinces us that respondents, for some reason not disclosed by the evidence, changed their minds, and concluded they did not want to complete the sale; that appellant was at all times ready, willing, and able to close the deal, but that, without fault on his part, he was prevented by respondents' wrongful acts from so doing.

The judgment is reversed, and the cause remanded with instructions to admit evidence for the purpose of ascertaining any damages appellant may have sustained.

Dunbar, C. J., Chadwick, Morris, and Ellis, JJ., concur.