[No. 14310. Department One. February 1, 1918.]

TACOMA & EASTERN LUMBER COMPANY, *Respondent*, v. FIELD & COMPANY, *Appellant*.[1]

SALES—MODIFICATION — CONSIDERATION — EXECUTED CONTRACT. In the absence of an independent consideration therefor, the contract for a sale of lath to be inspected by a bureau, whose certificate was final, cannot be modified by an agreement for a reinspection after it had become executed on the one side by the inspection and delivery called for in the contract.

SAME — CONSTRUCTION OF CONTRACT — INSPECTION. A contract for the sale of lath to be subject to inspection at the seller's expense, followed by provision for delivery, calls for but one inspection, reasonably inferred to be before delivery.

EVIDENCE—DECLARATIONS—ADMISSIONS OF AGENT. Where a seller of lath requested another inspection, with a view of confirming the previous inspection, which the contract states to be final, the last inspector is constituted the agent of the seller, and his report is admissible against the seller as a declaration against interest.

EVIDENCE—EXPERT EVIDENCE—SALES—INSPECTION—IMPEACHMENT—FRAUD. Although a contract for the sale of lath provided that it should be inspected by a bureau and up to a certain standard and

[1]Reported in 170 Pac. 360.

that the certificate of inspection should be final and conclusive, expert opinion that it was in fact not up to standard is admissible upon the issue as to whether the first inspector was so grossly mistaken as to be chargeable with fraud or bad faith.

SAME. In such case, the mistake which would justify an impeachment of the inspection must be more than a mere error of judgment and must amount to fraud.

SAME. In such case, the expert may not state whether the lath were fairly and properly inspected with reasonable care, since it would be the conclusion as to the motive of the inspector and not an opinion on the question of fact in issue.

DISCOVERY—STRIKING INTERROGATORIES. Where error is committed in failing to grant a motion to strike interrogatories made prior to trial, the court may correct the error by excluding them at the trial.

EVIDENCE—DECLARATIONS—ADMISSIONS BY AGENT. It is inadmissible to show declarations against interest by an agent or person in the office of the principal, where such person was not identified and the scope of his agency or authority did not appear.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered November 18, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

*Huffer & Hayden,* for appellant.
*Hayden, Langhorne & Metzger,* for respondent.

MAIN, J.—This action was brought by the Tacoma & Eastern Lumber Company, the plaintiff, against A. B. Field & Company, the defendant, to recover the purchase price of certain lath. The cause was tried to the court and a jury, and resulted in a verdict in favor of the plaintiff. From this judgment, the defendant appeals.

The facts are these: The respondent is a corporation located at Tacoma, Washington, and engaged in the business of buying and selling lumber, lath, and similar products. The appellant is a corporation located at San Francisco, and is also engaged in buying and selling such commodities. On the 12th day of Oc-

tober, 1914, these parties entered into an agreement in writing in which the respondent agreed to sell, and the appellant agreed to purchase, lath, the amount of which was not specified in the contract, but there is now no controversy over the number of lath purchased or delivered. The contract, so far as here material, was as follows:

"Amount, Specification & Grade: 1½x4' Douglas Fir lath, usual California grade as per Domestic List No. 6.

"Inspection & Tally: To be made at the expense of sellers by Inspector of Pacific Lumber Inspection Bureau, in accordance with grading rules of Domestic List No. 6, its certificate to be final.

"Delivery: F. a. s. exporting vessel Chicago-Milwaukee wharf, Tacoma, on flat cars or gons.

"Payment: Buyer's San Francisco office to remit within five days after receipt of vessel's receipt for pieces. Invoices in sextuplicate and Bureau Inspection certificates in triplicate."

It will be noted that this contract requires the lath to be delivered f. a. s. exporting vessel Chicago-Milwaukee wharf, Tacoma, on cars. On November 7, 1914, the contract having been executed during the previous month, the respondent was notified that the steamship Grace Dollar would, on or about November 11th, arrive in Tacoma to take the lath to San Francisco. The lath were loaded from the mill of the Eatonville Lumber Company on three gondola cars of the Chicago, Milwaukee & St. Paul Railway Company, and by this company transported to alongside the steamship Grace Dollar at Tacoma. While the lath were being loaded upon the cars at Eatonville, they were inspected by an inspector of the Pacific Lumber Inspection Bureau. Thereafter, and on November 10th, the inspector designated by the Pacific Lumber Inspection Bureau issued a certificate of inspection under the seal of the

bureau. This certificate recited that the lath had been personally surveyed and inspected according to the grading and survey rules, "as per Domestic List No. 6 adopted by the West Coast Lumber Manufacturers' Association."

On November 12th, the lath were taken aboard the steamship Grace Dollar and transported to San Francisco, where they arrived on November 21st, and the discharge thereof at the wharf of the Hart-Wood Lumber Company in that city was at once begun. When the lath were discharged from the vessel, the appellant refused to accept them, because it claimed that they were not up to grade, "as per Domestic List No. 6," and, through its Tacoma manager, notified the respondent of this fact. Thereafter the parties, through their respective managers at Tacoma, had a number of conversations touching the controversy. On one or more occasions it was suggested by the manager of the appellant that a reinspection be had in San Francisco, but the manager of the respondent declined to accede to this request, claiming that the inspection made before shipment was, by the terms of the contract, final, and it was therefore binding upon the parties. However, on December 3, 1914, the respondent wrote a letter to the appellant, the substance of which is as follows:

"We have requested Mr. Alexander, of the Pacific Coast Lumber Inspection Bureau, to have their California inspector reinspect this stock. We do this with the idea that he certainly will confirm the inspection certificate, which we note your contract states plainly would be final, and that your people will then settle with us in full."

On December 15, 1914, one A. F. E. Irwin, an inspector of the Pacific Lumber Inspection Bureau, in response to the respondent's request to that bureau

for a reinspection, inspected the lath on the wharf of the Hart-Wood Lumber Company in San Francisco, and made a written report thereof to the inspection bureau. This report is in the form of a letter, and is addressed to the Pacific Lumber Inspection Bureau, Incorporated, at its office in Seattle, Washington. The Irwin inspection did not confirm the previous inspection, but held that the lath were below grade. The appellant persisted in its refusal to make payment, and finally, after notice, sold the lath to pay freight charges and storages which had accrued, and tendered the balance of the proceeds to the respondents. This tender was promptly refused and the present action instituted, which, as above stated, was for the purpose of recovering the purchase price.

The first question relates to the ruling of the trial court in refusing to admit in evidence the letter or certificate of inspection of the San Francisco inspector, Irwin. The appellant advances two theories upon which it is claimed this letter should have been admitted. The first is that the parties had agreed to a reinspection, and that, therefore, the Irwin inspection superseded the previous inspection and was controlling; but the report of this inspection was not admissible upon this theory. The parties, by their contract as above set out, had agreed that the lath should be inspected by the Pacific Lumber Inspection Bureau in accordance with grading rules of Domestic List No. 6, "its certificate to be final." Under this contract, the lath were inspected when they were placed aboard the cars at Eatonville, and were found to meet the contract standard. Thereafter, they were delivered f. a. s. the Chicago-Milwaukee wharf at Tacoma, as required by the contract. So far as the respondent was concerned, the contract then became an executed one. The respondent claims that, since the contract was no longer

executory on both sides, the subsequent agreement for a reinspection—assuming now that the letter above referred to constituted such an agreement—was of no validity because not supported by an independent consideration. The rule is that, while a contract remains executory on both sides, an agreement to annul on one side is a consideration for the agreement to annul on the other; but that, if the contract has been executed on one side, an agreement without a new consideration that it shall not be binding is without consideration and void. The rule is well stated in 9 Cyc., page 593, as follows:

"While a contract remains executory on both sides, an agreement to annul on one side is a consideration for the agreement to annul on the other, and *vice versa.* On the other hand, if the contract has been executed on one side, an agreement without any new consideration that it shall not be binding is without consideration and void."

This rule finds support in many adjudicated cases, only a few of which will be here assembled. *Wilson v. Wilson,* 115 Mo. App. 641, 92 S. W. 145; *George v. Lane,* 80 Kan. 94, 102 Pac. 55; *Zerr v. Klug,* 121 Mo. App. 286, 98 S. W. 822; *Weed v. Spears,* 193 N. Y. 289, 86 N. E. 10.

Applying the rule to the facts in the present case, the evidence fails to show an independent consideration, and, therefore, since the contract had become executed on one side, it could not be modified except by an agreement supported by new consideration.

The appellant relies upon the case of *Long v. Pierce County,* 22 Wash. 330, 61 Pac. 142, but a careful reading of that case will disclose that the subsequent agreement there involved was made while the contract remained executory on both sides. The report of the San Francisco inspection was not admissible upon the

theory that the parties had agreed upon this reinspection, and that the previous inspection had been superseded thereby. Something is said to the effect that the San Francisco inspection could as well be the one provided for in the contract as the inspection which took place at Eatonville, but the contract plainly contemplates but one inspection, and it is reasonably inferable from its terms that this inspection was to be made prior to the shipment.

The other theory upon which it is claimed that the report of the San Francisco inspector is admissible is that, in making the inspection, he was the agent of the respondent. This contention seems to be meritorious. As already pointed out, there was no binding agreement for the reinspection, even if the parties had assumed to make such an agreement. The letter referred to and quoted from in the statement, by which the Pacific Lumber Inspection Bureau was requested to have its California inspector reinspect the lath, in effect, as we construe the letter, makes the bureau the agent of the respondent, and if this be true, it follows that Irwin, in making the reinspection, would be the agent of the respondent. The letter recites that the inspection is requested "with the idea" that it will confirm the previous inspection which the contract states should be final, and that then settlement will be made. The respondent claims that Irwin acted under the authority of this letter in the capacity of an arbitrator, and, therefore, his declarations are not admissible against either party. It may be here assumed that, if the California inspector acted in this capacity, the letter was inadmissible. As we have already seen, there was no binding agreement by which he became the inspector provided for in the contract. There was no agreement by which he was to act as an arbitrator. His authority to act flowed from the respondent by

reason of the letter to the inspection bureau, and from that bureau in turn to him. This, we think, constituted him the agent of the respondent. The rule is that the acts and declarations of the agent, when acting within the scope of his authority, having relation to, and connected with, and in the course of, the particular transaction in which he is engaged, are, in legal effect, the acts or declarations of his principal. 2 Wigmore, Evidence, § 1078; *Rogers v. Trustees of New York & Brooklyn Bridge,* 11 App. Div. 141, 42 N. Y. Supp. 1046; *St. Louis & S. F. R. Co. v. Weaver,* 35 Kan. 412, 11 Pac. 408, 57 Am. Rep. 176. Irwin, being the agent of the respondent, his report was admissible in evidence to the same extent as declarations of like effect made by the principal.

The next question also relates to the ruling of the trial court on the admission of evidence. Upon the trial the appellant offered to prove by a number of witnesses who had examined the lath on the dock at San Francisco, and who had qualified as experts in the particular line, that the lath were not up to the standard fixed by the contract, to wit, Domestic List No. 6, and the extent to which the lath failed to meet that requirement. This evidence was objected to by the respondent and the objection was sustained. The theory of the objection, as we gather it from the respondent's brief, is that, since the contract provided for an inspection which should be final and binding upon the parties, and since an inspection had been made, the opinions of expert witnesses could not be taken, because it involved the impeaching or overturning of the opinion of the contract inspector by the force of opinion evidence; but we cannot think that this contention is sound. There can be no doubt that the law is well settled that, where the parties agree that the performance or nonperformance of a contract, or the

quantity, price, or quality of goods sold is left to the determination of a third person, his judgment or estimate is binding, in the absence of actual fraud or mistake so gross as to imply bad faith or constructive fraud. *Chicago, Santa Fe & California R. Co. v. Price,* 138 U. S. 185; *California Sugar & White Pine Agency v. Penoyar,* 167 Cal. 274, 139 Pac. 671; *Sweet v. Morrison,* 116 N. Y. 19, 22 N. E. 276, 15 Am. Rep. 376. This is admitted by both sides to be the rule. There can be no controversy over the further rule that, where the question to be determined is one which involves the exercise of special knowledge or skill, persons possessing either education or experience in particular lines may be permitted to express an opinion. At times the question may be such that this opinion relates to a fact which is to be determined by the jury; but there are many questions of fact which cannot be determined without such opinion evidence. The fact that it may bear upon one of the facts which the jury must determine does not necessarily make the opinion evidence inadmissible. 1 Greenleaf, Evidence (16th ed.), p. 551; *Littlejohn v. Shaw,* 159 N. Y. 188, 53 N. E. 810.

In the case last cited, it is said:

"The established rule is that upon questions of science, or skill, or trade, persons experienced in those particular departments may be allowed to give their opinions in evidence. The rule is confined in its operation to cases in which, from the very nature of the subject, facts disconnected from such opinions cannot be so presented to a jury as to enable them to pass upon the question with the requisite knowledge and judgment. *Jefferson Ins. Co. v. Cotheal,* 7 Wend. 73; *Ferguson v. Hubbell,* 97 N. Y. 507; *Van Wycklen v. City of Brooklyn,* 118 N. Y. 424, 24 N. E. 179; *Transportation Line v. Hope,* 95 U. S. 297. Nor is it an objection, as these appellants argue, that the question asked of the witnesses involved the point to be decided by the jury. As experts, their opinions were admis-

sible, because, from the nature of the case, the jury needed their aid to enable them to form an accurate and intelligent judgment."

We will endeavor here to point out the application of this rule to the present case. The inspection before shipment, by the terms of the contract, was final and conclusive, in the absence of fraud or mistake so gross as to imply bad faith or constructive fraud. We do not understand that actual fraud is claimed. The question, therefore, was whether the first inspection was so grossly erroneous that the jury might infer therefrom bad faith or fraud. The opinion of the experts referred to, whose testimony was rejected, related to a question of fact, and that was whether the lath were up to standard, and, if not, to what extent did they fail to meet the contract requirement? This testimony was intended to establish to what extent the lath failed to meet the standard. It was then for the jury to determine to what extent, if at all, the lath failed to meet the requirements of the contract, and take this fact, in connection with all the other testimony, and determine whether the first inspector was so grossly mistaken that the implication of fraud or bad faith would arise. The ultimate question which the jury were required to determine was whether the inspector could be charged with implied bad faith or constructive fraud. As before stated, the evidence offered and rejected was opinion evidence upon a question of fact. If the opinions of witnesses cannot be taken upon a question of this character, it would be difficult to see how it could be established by evidence that the lath were not up to grade. It would be obviously impossible to have witnesses detail the condition of each of more than 400,000 lath, and thereby convey to the jury a correct impression as to their quality and condition; but even if this could be done, it still would be necessary to ad-

vise the jury what the standard was and to what extent, if at all, the commodity failed to meet the grade. The evidence offered and rejected should have been admitted as tending to support the charge of gross mistake implying bad faith or constructive fraud. If it only tended to show an error of judgment on the part of the inspector it was not admissible. The "mistake" which will justify an impeachment of the inspector's decision must be more than a mere error of judgment. In *California Sugar & White Pine Agency v. Penoyar, supra,* it was said:

"The 'mistake' which will justify an impeachment of the arbiter's decision is not mere error of judgment, but is the kind of mistake which 'amounts to fraud' (*Am. Haw. E. & C. Co. v. Butler,* 165 Cal. 497, 133 Pac. 280), *i. e.,* such mistake as has prevented a fair exercise of judgment upon the question to be determined. The answer here does not set up any fraud or mistake affecting the decision of Hollihan. It was clearly intended to charge only that he rejected lumber that he should have accepted—in other words, that he erred in the exercise of his judgment. And the testimony offered in support of these averments went no further. It appears, simply, that Hollihan and the defendants differed in their opinions regarding the grading of the lumber, and that the defendants and their witnesses thought Hollihan's opinion was wrong."

The appellant propounded to the witnesses a number of questions along another line, and these were objected to and the objection sustained. By these questions the opinions of the witnesses were sought upon the question whether the lath were fairly, properly, and with reasonable care, inspected before shipment. The questions called for answers on the part of the witnesses by which they would characterize the motive and conduct of the Tacoma inspector. They were not experts in this line; this was not a question of fact

upon which they were specially qualified to speak. The answers would be the conclusions of the witnesses upon the merits of the case, and not their opinions upon a question of fact in a matter in which they were specially versed. No authority has been submitted which would sustain the admission of this line of testimony, and it would hardly be too dogmatic to say that none can be found.

Error is assigned upon the ruling of the court in rejecting interrogatories which were attached to the appellant's answer and which the respondent had moved to strike and the motion had been overruled. It is claimed in support of this assignment that, since the court had overruled the motion to strike the interrogatories made prior to the trial, it was error not to admit the interrogatories and the answers thereto in evidence when offered. The authorities cited in support of this contention are cases where no motion had been made to strike the interrogatories and the objection to them was made for the first time when they were offered in evidence upon the trial. This line of authorities is not in point under the facts in the present case. If the trial court committed error in failing to grant the motion to strike the interrogatories, it had a right to correct this error at a later stage in the proceeding. *Toutle Logging Co. v. Hammond Lumber Co.*, 78 Wash. 568, 139 Pac. 625; *Beck v. International Harvester Co.*, 85 Wash. 413, 148 Pac. 35.

One other contention of the appellant should be noticed. Upon the trial the appellant sought to prove by its Tacoma agent a conversation which that agent had with some one in the office of the respondent. The witness could not give the name of, or identify, the person with whom the conversation was claimed to have been had. The matter sought to be established by this witness was a declaration against interest.

Conversations over a telephone with a person not identified are admissible in evidence to the same extent as a personal interview by a customer with an unknown clerk in charge of an ordinary shop would be in relation to the business there carried on. *Wolfe v. Missouri Pac. R. Co.*, 97 Mo. 473, 11 S. W. 49, 10 Am. St. 331, 3 L. R. A. 539; *Kimbark v. Illinois Car & Equipment Co.*, 103 Ill. App. 632. But, under the rule above stated, relating to the admissibility of the declarations or acts of an agent, before such acts or declarations can be admitted in evidence it is necessary that the scope of the agency be shown and that the acts or declarations were connected with, and in the course of, the particular transaction in which the agent was engaged. Under this rule, before the declaration against interest was admissible in evidence, it was necessary to show that such a declaration was not beyond the scope of the agent's authority. Without the identity of the person, the scope of the agency could not well be made to appear. There was no error in rejecting this evidence.

The case of *Missouri Pac. R. Co. v. Heidenheimer*, 82 Tex. 195, 17 S. W. 608, 27 Am. St. 861, does not sustain the right to introduce the declaration of an agent against the interest of his principal without identifying the agent and showing the scope of his authority. In that case it was said that a demand made over the telephone to some one in the office of the defendant company, even though that person was not identified, was sufficient, but the succeeding paragraph of the opinion points out that no demand was necessary, and consequently what was said relative to the effect of the telephone conversation was not necessary to the decision of the case.

There are two or three other points made by the appellant, which to discuss in detail would unneces-

sarily extend this opinion. It may be said, however, that we have considered these points and in none of them is there substantial merit. Because of the error in refusing to admit the report of the San Francisco inspector, and the error in refusing to permit expert witnesses to give an opinion as to whether the lath met the required standard, the judgment will be reversed, and the cause remanded for a new trial.

ELLIS, C. J., FULLERTON, PARKER, and WEBSTER, JJ., concur.