[No. 30458.   Department Two.   July 29, 1948.]

STEPHEN D. HOPKINS, *Appellant*, v. BENJAMIN BARLIN, *Respondent*.[1]

[1]Reported in 196 P. (2d) 347.

*Solie M. Ringold*, for appellant.

*Eggerman, Rosling & Williams*, for respondent.

STEINERT, J.—Plaintiff brought suit for the return of a sum of money which he had previously paid to defendant for the execution and delivery by defendant to plaintiff of a written instrument wherein defendant had granted to plaintiff the right, during a specified period, to purchase certain business property belonging to defendant. A demurrer to the complaint was sustained, and, upon plaintiff's refusal to plead further, the trial court entered judgment dismissing the action. Plaintiff appealed.

Our statement of the facts is necessarily based upon the allegations of the complaint. Respondent, Benjamin Barlin, was engaged in business in the city of Seattle under the trade name of Commercial Linen Company. On August 26, 1946, he executed and delivered to appellant, Stephen D. Hopkins, a written instrument denominated "Option To Purchase," in return for which appellant paid respondent the sum of five thousand dollars. A copy of the instrument is attached to, and by reference made a part of, the complaint. We quote the material portions and provisions thereof:

"OPTION TO PURCHASE

"The undersigned BENJAMIN BARLIN [respondent herein] of Seattle, Washington, hereinafter referred to as 'Barlin', who is doing business as 'Commercial Linen Company' with offices in the City of Seattle, does for a consideration of Five

Thousand Dollars ($5,000.00) to be paid to him upon the execution by him of this agreement *hereby give and grant* to STEPHEN D. HOPKINS [appellant herein] of Olympia, Washington, *the right to purchase* the accounts receivable, inventory of merchandise, machinery, equipment, furniture and fixtures of said business which are located in the building on the real estate hereinafter described on the date of the exercise of this option, and the trade-mark and trade names of and belonging to the said Commercial Linen Company, under the following terms and conditions:

"(1) The purchase price shall be the sum of $32,500.00 plus an amount equal on the date of the exercise of the option to the following: [the value, as determined, of the accounts receivable, inventory, furniture, fixtures, machinery and equipment].

"(2) Said $32,500.00 shall be paid immediately upon the exercise of this option, credit being first given for amount paid for this option or to extend the option as hereinafter provided. Payment for the other items above referred to shall be made as soon as the value thereof as hereinbefore provided is ascertained.

"(3) In the event said option is exercised and payment is made as aforesaid, then Barlin agrees that for a period of ten years from the date of the exercise of said option, he will not engage directly or indirectly in the business in the states of Washington, Oregon, Idaho, Montana and the Territory of Alaska of selling or dealing in the following items: [items of merchandise specified].

"In consideration of said agreement by Barlin, Hopkins by the exercise of said option will thereby be deemed to have agreed to pay to Barlin, his heirs, executors or administrators, the sum of $17,500.00 payable as follows: [installments of $2,500.00 each, payable on January 2d and July 2d of each year, beginning January 2, 1947, until the full sum of $17,500.00 shall have been paid.] . . .

"(4) In the event this option is exercised by Hopkins, he shall have the right for a period of ten days after this option is exercised to lease all the real property now occupied by Commercial Linen Company for a period of ten years at a rental of $750.00 per month, said lease to be upon a form agreed upon by counsel for the parties hereto. Said real property is described as follows: [description given]

"In the event Hopkins as lessee is not in default under said lease during the first five years thereof, he shall have the right during said five years at any time to buy said real property free and clear of all encumbrances for the sum of

$100,000.00, said amount to be reduced, however, by the amount of rental and rent deposit theretofore paid under said lease after deducting from said rental the following items: [taxes, insurance, repairs, etc.]

"In the event Hopkins desires to exercise the aforesaid right to purchase said real property, notice of the exercise of said right must be delivered to Barlin at least 90 days prior to the proposed date of purchase. Payment for said real property shall be made within ten days after Barlin has furnished Hopkins with title insurance and computation of the amount of the net purchase price.

"(5)   In the event this option is exercised, Barlin agreed for a period of six months from the date of said exercise to advise with Hopkins with respect to the business conducted with the assets purchased under this agreement and to serve during such period as one of the directors of such corporation as Hopkins may cause to be formed to conduct said business. The time devoted to such advice shall be in the discretion of Barlin.

"(7)   In the event this option is not exercised within 60 days from the date of payment of said $5,000.00, then by the payment of another $5,000.00 delivered to Barlin before the expiration of said initial 60 days, the period of the option will be extended for an additional 30 days.

"(8)   Signed notice of the exercise of this option must be delivered in writing to the undersigned within 60 days from the date said payment of $5,000.00 is received by the undersigned or within 30 days after payment of the $5,000.00 to extend the option for an additional 30 days as aforesaid.   .   .   .

"(10)   In the event said option is exercised, Barlin *will convey the items to be transferred and conveyed by him hereunder* free and clear of all encumbrances and the closing of such transaction shall be accomplished in accordance with the Bulk Sales Law of the State of Washington.

"THIS OPTION AGREEMENT made and executed this 26th day of August, 1945.                    /s/  B. BARLIN
                    "Doing Business as Commercial Linen Co."
(Italics ours.)

It will be noted that, in paragraphs 1 and 2 of the option, the purchase price is shown as $32,500, less credit for amount paid for the option, or $5,000, while in paragraph 3 the purchase price, over and above such credit, is shown

as $17,500. This discrepancy, however, is immaterial so far as this action is concerned.

After setting forth, by reference, the provisions of the option to purchase, the complaint alleged that both prior and subsequent to August 26, 1946, the day on which that instrument was executed and delivered and the five thousand dollars paid, the parties thereto agreed that, in the event appellant should be unable to consummate the purchase of the business from the respondent, the sum of five thousand dollars would be refunded and repaid to appellant; that appellant was unable to interest capital in the purchase of the business and was unable to consummate the purchase thereof within sixty days from August 26, 1946; and that, despite oral and written demands therefor, respondent had failed and refused to return the five thousand dollars.

Upon this state of facts as alleged in the complaint, appellant sought, but was denied, recovery of the amount paid by him for the option to purchase respondent's property.

Appellant's contentions are: (1) that the instrument involved in this case is not a true and valid option, because it contains no definite and specific undertaking on the part of respondent, the offeror, not to revoke the offer during the specified time; (2) that respondent gave no consideration for the five thousand dollars paid by appellant; (3) that the instrument was simply a *receipt* for money paid by appellant or, in any event, was ambiguous as to the disposition to be made of the money, and hence parol evidence was admissible to show the true agreement of the parties; and (4) that parol evidence was admissible to prove a subsequent agreement by the parties that the money would be refunded to the appellant in the event he should be unable to consummate the purchase of the property.

Appellant's first contention necessitates that we set forth, in part, the nature and characteristics of an option, in order that we may properly determine whether the written instrument between the parties was in law an option agreement.

■ An option to purchase real property may be defined as a contract by which one party, owner of the property and termed the optionor, for valuable consideration, sells to another party, called the optionee, the right to buy, or agrees with that other party that the latter shall have the privilege of buying, the property within the time, for the price, and upon the terms and conditions specified in the option agreement, but which of itself imposes no obligation on the optionee to purchase the property. James, Option Contracts, 2-7, §§ 101, 102; 55 Am. Jur. 492 *et seq.*, Vendor and Purchaser, §§ 27-33; 66 C. J. 485 *et seq.*, Vendor and Purchaser, §§ 12-16; 30 Words and Phrases (Perm. ed.) 5 *et seq.*

■ Such option does not transfer to, nor vest in, the optionee any title or right *in rem*, but creates only a right *in personam* to elect whether or not he will accept or decline the offer of the optionor. The thing thus contracted for or sold by the option is not the property itself, but merely the right of election to purchase the property. 55 Am. Jur. 493, Vendor and Purchaser, § 27. The optionor parts only with the right to sell the property to any other person during the time limited, and the optionee acquires only the right to purchase the property *in futuro*, upon the terms and conditions prescribed by the option contract. James, Option Contracts, 4, § 102.

■ If the option, which is in effect a continuing offer, is supported by sufficient consideration, it becomes a binding contract and cannot be withdrawn or revoked by the optionor during the time specified therein. 12 Am. Jur. 528, Contracts, § 33; 55 Am. Jur. 501, Vendor and Purchaser, § 31; 66 C. J. 507, Vendor and Purchaser, § 31; 1 Williston, Law of Contracts (Rev. ed.) 175, § 61.

In Restatement of Law of Contracts, § 46, the rule is stated thus:

"An offer for which such consideration has been given or received as is necessary to make a promise binding, or which is in such form as to make a promise in the offer binding irrespective of consideration, cannot be terminated during the time fixed in the offer itself or, if no time is fixed,

within a reasonable time, either by revocation or by the offeror's death or insanity.

"*Illustration*:

"1. A promises B under seal or in return for $100 or other sufficient consideration that A will sell B 100 shares of stock in a specified corporation for $5,000 at any time within thirty days that B selects. The offer is irrevocable."

In *Baker v. Shaw*, 68 Wash. 99, 122 Pac. 611, suit was brought to recover damages for breach of contract arising out of an option agreement. This court recognized the rule above expressed by pointing out and contrasting the conditions under which an option may or may not be withdrawn, saying:

"If a valuable consideration passes from the person to whom the option is given, the party giving it cannot withdraw his offer within the agreed period of time over which the option is to extend. On the other hand, if the option be given without consideration, it may be withdrawn at any time prior to its acceptance and a tender of performance, but not thereafter, as such acceptance will convert it into a bilateral or mutual contract, binding upon both parties."

Since an option is a continuing offer and, when supported by valuable consideration, in itself imports irrevocability during the time specified therein, it is immaterial that the instrument does not in express terms provide that the offer shall remain open, and shall not be revoked, within that time. Implicit in the terms of an option given for valuable consideration is a binding promise on the part of the optionor to keep his offer open for the prescribed length of time. 55 Am. Jur. 501, Vendor and Purchaser, § 31.

The written instrument with which we are here concerned specifically recited that, for a consideration of five thousand dollars to be paid by appellant upon the execution of the agreement, respondent gave and granted to the appellant the *right to purchase* the property upon the terms as therein set forth. The instrument recited mutual consideration given and received, and constituted a binding contract between the parties. The consideration moving from the appellant was the sum of five thousand dollars,

for which the appellant received the right to purchase the property, at his option, within a specified time and upon the terms and conditions therein provided. The consideration moving from the respondent was the obligation on his part to sell the property to the appellant, if the latter chose to purchase it within the specified time, and to refrain from selling the property to anyone else during that time. Thus, respondent gave ample legal consideration for the five-thousand-dollar payment made to him by appellant. This disposes of appellant's first and second contentions.

As ground for his third contention, stated above, appellant alleged in his complaint that *prior* to August 26, 1946, the day on which the option agreement was executed, it was agreed between the parties that, should appellant be unable to consummate the purchase of the business from the respondent, the sum of five thousand dollars would be refunded and repaid to appellant. It is not contended by appellant that this alleged agreement was other than oral. Appellant now contends, however, that, under this allegation in the complaint, parol evidence would have been admissible to prove such agreement. Two reasons are assigned as the basis for this contention: (1) that the document in question constituted nothing more than a receipt for the sum of five thousand dollars, and therefore parol evidence was admissible to explain its provisions; and (2) that the document is ambiguous as to the disposition to be made of the five thousand dollars in the event the purchase was not consummated, and parol evidence was therefore admissible to clear away the ambiguity.

■ A receipt is not a contract, but is merely a written admission or acknowledgment by the person signing it or for whom it is signed that such person has received from another person a sum of money or other thing of value; and such an instrument may be explained or contradicted by parol evidence. *Elliott v. Seattle Co.*, 178 Wash. 94, 34 P. (2d) 442; 36 Words and Phrases (Perm. ed.) 434-440.

■ The instrument here in question was not a mere receipt acknowledging payment of money owing by one party to another, but was an option to purchase which,

upon payment of the five thousand dollars by appellant, became a binding contract between the parties, under which respondent parted with a right, and appellant acquired a right, with respect to the sale and purchase of the property.

There is nothing ambiguous in the option with reference to the disposition to be made of the five thousand dollars in the event the purchase was not consummated. The writing clearly stated that the payment of that sum was the consideration for the option to purchase contemporaneously given and granted by the respondent. In other words, appellant bought, paid for, and acquired a right, at his election, to purchase certain property, on certain terms; and respondent in turn received as consideration for selling that right the sum of five thousand dollars. When appellant paid this money as a consideration for the right which he acquired, the money became the property of the respondent, and appellant could assert no further claim upon it. *Dutton v. Christie*, 63 Wash. 372, 115 Pac. 856.

Under the parol evidence rule, all conversations and parol agreements between the parties prior to a complete valid written contract are so merged in the written contract that they cannot be given in evidence for the purpose of changing the contract or showing an intention or understanding different from that expressed in the written agreement. *Hockersmith v. Ferguson*, 63 Wash. 581, 116 Pac. 11; *Thomson & Stacy Co. v. Evans, Coleman & Evans*, 100 Wash. 277, 170 Pac. 578; *McGregor v. First Farmers'-Merchants' Bank & Trust Co.*, 180 Wash. 440, 40 P. (2d) 144; *Asher Bros. General Illuminating Co. v. General Illuminating Co.*, 193 Wash. 105, 74 P. (2d) 495.

To have permitted appellant to introduce proof of an alleged prior oral agreement would have violated the parol evidence rule.

The remaining contention of appellant is that, under the allegations of his complaint, he was entitled to show that, *subsequent* to the execution of the option agreement, the parties agreed that, if appellant should be unable to consummate the purchase of respondent's business, the

five thousand dollars would be refunded and repaid to appellant.

It is undisputed that respondent kept the option open for the full time specified therein and did nothing which in any way interfered with appellant's right to purchase and acquire the property upon the terms and conditions of the option, had he so elected. No part of the option agreement itself remained executory. Both parties had done all that they were required to do thereunder. Respondent not only had granted an irrevocable right for the specified time, but also had refrained from interfering with that right during the prescribed period; and appellant had paid in full the consideration for that right. The option agreement was therefore an executed contract. There is no allegation in the complaint that the alleged subsequent oral agreement annulled the option or released respondent therefrom, but only that, if appellant were unable to consummate the purchase under the terms of the option, the five thousand dollars would be refunded to him. There was no allegation of an independent consideration for the alleged subsequent oral agreement.

It is the settled rule that while a contract remains executory on both sides, an agreement to annul on the one side constitutes consideration for the agreement to annul on the other side; but that if the contract has been executed on one side, an agreement that it shall not be binding is void unless a new consideration is given therefor. Where a contract has become executed, it cannot be modified except by an agreement supported by new consideration. *Tacoma & Eastern Lbr. Co. v. Field & Co.*, 100 Wash. 79, 170 Pac. 360.

Under this rule, there was no independent consideration for the alleged subsequent oral agreement.

The judgment is affirmed.

MALLERY, C. J., BEALS, ROBINSON, and JEFFERS, JJ., concur.