THE CITY NATIONAL BANK OF DAYTON, OHIO, Appellant, vs. KUSWORM, Respondent.

*September 28 — October 22, 1895.*

*Promissory notes: Duress: Restoration of consideration.*

1. A note procured by duress is not void but only voidable, and in an action thereon the duress is not a defense if the maker retains a valuable consideration received by him therefor.

2. So where, in consideration of a note alleged to have been given under duress, the payee surrendered to the maker prior valid notes executed by the latter for the same amount, the duress is not a defense to an action on the new note if the maker retains the notes so surrendered. But if those notes have been lost or destroyed without his agency by mere accident, it may be that the duress will be a defense, provided the maker does all he can to put the payee in as good condition as he was before the note in suit was given.

3. Where, in an action on a note, the defendant alleged that it was given by her under duress of threats of criminal prosecution of her husband on the charge of forging notes deposited by him as collateral security for other notes executed to the plaintiff bank, which last-mentioned notes were surrendered when the note in suit was given, it was error to charge the jury that the fact how the notes surrendered by the bank were signed or executed does not control the question of defendant's liability, and that, if such notes were lost, destroyed, or converted without any fault or act on the part of defendant, "it matters not whether they were signed by her husband in his name, or in her name by him as her authorized attorney."

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

This action is to recover the amount of a promissory note made by the defendant, at Chicago, Illinois, November 2, 1892, wherein and whereby the defendant, on demand, for value received, promised to pay to the order of the plaintiff the sum of $4,900, at Chicago, with interest at the rate of six per cent. per annum after date; and to secure the payment of such note certain collateral security was thereby pledged by the defendant. The defendant answered by way of admissions and denials, and alleged, in effect, that the note was given, without any consideration, to compound a felony of Moses Kusworm, then the husband of the defendant, but since deceased; that said note was given under duress of threats to prosecute said Moses for said crime. She alleged that on the day and year mentioned the plaintiff represented to the defendant, in effect, that said Moses was then indebted

to the plaintiff, for money loaned to him, in the sum of $4,900; that said Moses had procured said loan by depositing with the plaintiff certain forged notes as collateral security; that said Moses had, without authority, signed the names of the apparent makers to said collateral notes, and had thereby committed the crime of forgery in the state of Ohio, and was liable to arrest and to be taken to Ohio for trial and punishment for such felony; that the proof of the guilt of said Moses was clear and positive, and that there was no way for him to escape punishment; that the plaintiff, by its agent, was then and there present in Chicago to arrest said Moses and remove him to Ohio for trial and punishment, unless the money so owing by Moses to the plaintiff should then be paid or secured; and that, if so paid or secured, said Moses would not be prosecuted or arrested for such forgery. It is further alleged that said Moses was then and there very sick, and said sickness soon after terminated in his death; and that the defendant, overcome by such threats and representations, and to prevent such arrest and removal of said Moses, and for no other purpose or consideration, signed the note in suit.

At the close of the trial the jury returned a verdict in favor of the defendant. From the judgment entered upon that verdict the plaintiff appeals.

For the appellant there were briefs by *Burr W. Jones, S. S. Gregory*, and *L. P. Conover*, and oral argument by *Mr. Gregory.*

For the respondent there was a brief by *Bashford, O'Connor & Aylward*, and oral argument by *R. M. Bashford.*

Cassoday, C. J. This case was here upon a former appeal (88 Wis. 188, 26 L. R. A. 48) where the facts are more fully stated. On the trial which resulted in the judgment then here for review, the trial court held that, as the answer admitted the making of the note, the burden was on the de-

fendant and she had the right to open and close the case: and so it happened that the plaintiff offered no evidence at any stage of that trial. On the contrary, the court, at the close of the evidence on the part of the defendant, directed a verdict in favor of the plaintiff on the ground that, although there was evidence that the defendant was induced to execute the note in suit by duress, yet her defense failed because she had not returned, nor offered to return, to the plaintiff the notes surrendered by it at the time the defendant executed and delivered the note in suit. The judgment on that appeal was reversed for the reasons stated in the opinion.

On that appeal it appeared, from the undisputed evidence, that the notes so surrendered when the defendant gave the note in suit were one for $800 and one for $4,100, each made by Moses Kusworm and delivered to the plaintiff, for moneys, to the amount of those notes respectively, loaned by the plaintiff to Moses Kusworm at the time of giving such notes, and also four, five, or six notes, purporting to have been signed by sundry persons, aggregating seven or eight thousand dollars, which Moses Kusworm turned out to the plaintiff, at the time he so borrowed such moneys, as collateral to his own notes so given, and the signatures to which collaterals, the plaintiff's agent represented to the defendant at the time of giving the note in suit, had been forged by her husband. In the opinion of the court on that appeal it is said: "Since the verdict was directed for the plaintiff, we must, for the purposes of this appeal, assume that the $800 note and the $4,100 note were each signed 'M. Kusworm,' by Moses Kusworm, as and for his own signature, and not as and for the signature of his wife. . . . It certainly cannot be said as a matter of law, upon the record before us, that the defendant received any pecuniary benefit or consideration for signing the note in suit, or that she was in any way liable upon or on account of any of the notes surrendered by

the plaintiff at the time she signed that note. If the evidence before us is true, then she signed that note for the sole purpose of saving her sick husband from arrest, prosecution, and imprisonment. The envelope, containing the notes of $800 and $4,100, each signed 'M. Kusworm,' and the collaterals thereto, was not delivered by Gebhart to the defendant, but to Stone. Stone thereupon, in the presence of Gebhart, handed the same to the defendant, with the direction that she deliver the same to her husband. In pursuance of such direction, she did deliver the same to her husband. If the evidence in the record is true, then that is all she ever saw of, or had to do with, that envelope or any of the notes thus contained therein." The opinion in that case concludes with this statement: " Should it be made to appear upon a trial that the defendant, as executrix of her husband's estate, actually received the notes contained in the package, or otherwise became a party to the destruction or conversion of them, a different question would be presented."

On the last trial the defendant also had the burden, and she opened and closed the case. The evidence on her part was very much the same as on the former trial, and tended to prove the defense alleged in her answer, as mentioned in the foregoing statement. But upon the last trial, unlike the former trial, the plaintiff put in a good deal of evidence, tending to prove, in effect, that September 18, 1891, the defendant duly executed, acknowledged, and delivered to her husband a power of attorney, wherein and whereby she made, constituted, and appointed him her true and lawful attorney, for her and in her name, place, and stead, to sign, indorse, transfer, sell, or assign notes, checks, promissory notes, etc., with full power and authority to do and perform all and every act and thing as she might or could do if personally present; that by virtue of that power of attorney the defendant's husband made the $800 and the $4,100 notes mentioned, and signed each of them *Mollie Kusworm*, by M. Kusworm, at-

torney in fact, and delivered them, respectively, to the plaint-iff, secured by such so-called forged collaterals; and that in consideration therefor the plaintiff made and delivered to the defendant's husband certain drafts payable to the order of this defendant, *Mollie Kusworm,*— thus directly contro-verting several of the allegations in the defendant's answer and a considerable portion of the evidence in her behalf in support of such answer.

Notwithstanding the issue so made and such conflict in the evidence, the trial court, among other things, charged the jury as follows: "Now, in view of these instructions, you will observe, gentlemen, that the fact *how the notes* for the $4,100 and the $800, surrendered by the bank, *were signed or executed, does not control the question of her liability;* for I take it to be the law of this case that if the notes surren-dered and given up by Mr. Gebhart when he took the note sued on were lost, destroyed, or converted without any fault or act on the part of *Mrs. Kusworm, it matters not* whether they were signed by her husband in his name, *or in her name by him as her authorized attorney.*" Certainly, there is noth-ing in the opinion on the former appeal to justify this por-tion of the charge. The laws of Illinois on the subject are in evidence; and it is in effect conceded that under those laws the defendant, as a married woman, had power to make valid promissory notes by herself or by her authorized at-torney in fact. Upon the record thus presented we must, for the purpose of determining the correctness of the por-tion of the charge quoted, assume that before and at the time the defendant made the note in suit the plaintiff held two valid notes against her, aggregating the same amount. If this was so, then the defendant in no way increased the amount of her liability by giving the note in suit; and the only advantage the plaintiff obtained by the transaction was that, in lieu of the so-called forged collaterals given by the husband, the defendant gave certain collaterals of her own.

The City National Bank of Dayton, Ohio, vs. Kusworm.

Certainly, in determining whether the defendant acted voluntarily or by duress in making the note in suit, the fact whether she gave the note to secure her own debt, or to secure her husband's debt, would seem to be of more or less significance. Besides, if she was in fact the maker of the $800 note and the $4,100 note, then, when they were surrendered, they were, in legal effect, surrendered to her as her own. Especially would this be so in view of the fact that they were both delivered to her by Stone in the presence of the plaintiff's agent and with his tacit consent. If they were in fact her notes, then whatever she did with them after they were so surrendered to her she did as principal and not as agent for any one. If she so received those two notes as her own, then in passing them into the keeping of her husband she simply made him her agent for such custody. Under the former decision, it may be otherwise as to the so-called forged notes which she, as mere agent, passed over to her husband. If the $800 note and the $4,100 note were in fact made by the defendant, and surrendered to her, and then lost or destroyed without her agency by mere accident, it may be that she would not thereby be precluded from successfully defending upon the ground of duress, *provided* she should do all she could to put the plaintiff in as good condition as it was prior to the giving of the note in suit.

Counsel contend that, if the defendant was in fact the maker of those two notes, then the cancellation of the note in suit would not prevent the plaintiff from recovering upon the original indebtedness for which those two notes were given. But such legal liability flatly denied is in no sense equivalent to an admitted liability evidenced by a written promise to pay. Certainly, she could not receive and retain some benefit or advantage from the transaction, and at the same time repudiate the transaction. While it is conceded that a note procured by fraud is not void, but merely void-

able, yet it is said that a note procured by duress is an absolute nullity, and that in an action at law the duress is a perfect defense, even though the consideration for which the note is so given is still retained by the victim. We do not understand such to be the law. The only difference between fraud, undue influence, and duress is as to the method employed in overcoming the volition of the victim. In case of fraud the volition of the victim is usually overcome by deceit, false representations, or false pretenses. In case of undue influence the volition of the victim is usually overcome by importunities, flatteries, insinuations, and artifice, and yet all the authorities class undue influence as a subtle species of fraud. In case of duress the volition of the victim is usually overcome by fear of imminent injury to the person or property, and hence is a more gross species of fraud. 8 Am. & Eng. Ency. of Law, 649. "Duress exists where one, by the unlawful act of another, is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will." 6 Am. & Eng. Ency. of Law, 57. "When a contract is sought to be avoided as procured under duress, the party wronged must proceed promptly. If he remains silent, keeps the property received, or recognizes the contract by making payments thereon, he will be held to have waived the duress." Id. 88, and cases there cited. "A contract made under duress is not, however, strictly speaking, void, but only voidable, because it may be ratified and affirmed by the party upon whom the duress was practiced." 1 Parsons, Cont. (7th ed.), 446, *395. See, also, *Morse v. Woodworth*, 155 Mass. 249–251; *Foerster v. Squier*, 19 N. Y. Supp. 367, and cases there cited.

We must hold that the court erroneously charged the jury as indicated.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.