PORTER, Appellant, vs. COOK and wife, Respondents.

*March 11—April 1, 1902.*

*Contracts: Disputed construction: Accepted offer of compliance with contract: Protest: Duress: Election between remedies.*

1. Where the rights of the parties to a contract are in dispute, and one party makes an offer of compliance therewith in accordance with his construction of the contract, only upon condition that it settle the dispute, both parties having full knowledge and understanding as to how far it varies the rights asserted by the party to whom the offer is made, the acceptance or rejection of the offer is a matter of new contract, and the adoption of either course can be avoided for duress or coercion only when it is such as to override the will of the consenting party. *Ketchum v. Wells,* 19 Wis. 25, distinguished.

2. In such case the fact that the party must decide between serious inconvenience, embarrassment, or loss as the result of electing either course, is not enough to avoid the effect of the course chosen.

3. P.'s grantor, having agreed to sell land to C., afterwards insisted that, under the contract therefor, he was only required to give a quitclaim deed, while C. insisted he was entitled to a warranty deed, or an abstract showing clear title. Such controversy being submitted to arbitration, the arbitrator ordered the grantor, on payment of the balance due, to execute a deed covenanting against his own acts. He, however, executed a mere quitclaim deed, leaving it with the arbitrator for delivery when the purchase price was paid, and left the state. He had previously sold part of the land contracted to be conveyed, and part was encumbered by tax liens. C., having meanwhile contracted to convey the whole tract at an advance, being embarrassed by the delay, and with full knowledge of the defects and

variances in the deed, took the deed from the depositary, and paid him the consideration awarded by the arbitrator; protesting that he did not accept the deed as a compliance with the contract. *Held*, that C., by taking the deed, accepted full satisfaction of the contract, and had no right of action, except upon the deed itself, and, such deed being without warranty, he had no right of action thereon.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, JR., Circuit Judge. *Modified and affirmed.*

This was an action to foreclose a mortgage obtained by the plaintiff by assignment after due from L. C. Porter. The adjudication of the amount due on the mortgage is not attacked on this appeal. The defendant counterclaimed, amongst other things, for damages upon breach of a written contract made by L. C. Porter, December 29, 1888, as follows:

"Received of Jules Parmentier and *Wm. Cook* . . . thirteen hundred dollars to apply on F. B. Gardner's lands sold L. C. Porter, and deeded him November 1st, 1886, and recorded October 12, 1887. Sold said Parmentier and *Cook* at one dollar an acre."

Almost immediately after the making of this agreement, disputes arose as to its execution; Porter insisting that he was required thereby to give only a quitclaim, and the defendant insisting on a warranty deed, or abstract showing clear title to all of the property specified in the deed to Porter. This controversy continued, each party insisting on his position. In August, 1889, a formal tender was made by defendant, with a demand for compliance according to his construction of the contract, namely, either a warranty deed covering all of said lands, or a deed without warranty, accompanied by an abstract showing clear title; and Porter reiterated his willingness to give a quitclaim deed which should cover all of the lands specified in the deed to him, although he had sold some, and although of some he confessedly had

no title; also insisting that he was to be paid $1 an acre for all such lands, independently of whether he had any or an imperfect title. In this situation the parties entered into what is called an agreement for arbitration by one George Beyer, on November 7, 1889. They presented to him their various contentions, and he made an award covering this and various other matters. The portion relating to this agreement is substantially as follows:

"All the lands covered by above receipt to which L. C. Porter has title I order deeded to *Wm. Cook,* by deed covenanting against his own acts, upon payment of the balance due, with interest at seven per cent. from date of sale up to the time final payment is made."

Thereupon Porter executed a deed substantially the same as that which he had on previous occasions offered, to wit, a mere quitclaim deed, covering all of the lands received by him from the Gardner estate under the deed specified in the receipt, and deposited it with Beyer as custodian, to be delivered up on payment of $1 an acre for all the land named therein and interest in accordance with the award. That deed included certain lands which had been conveyed to Porter from the Gardner estate, but which in the interval he had sold, so that he had no title. It contained eighty acres of the same land as to which Porter had no title whatever, and it contained 120 acres the title to which was obscured by tax liens antedating the conveyance to Porter to a considerable amount. Meanwhile Parmentier had assigned to *Cook* all his rights under the agreement of sale above recited. After the delivery of that deed, Porter went to the Pacific coast, leaving it on deposit. Meanwhile *Cook* had contracted for sale of these lands at an advanced price to one Mariner, and was seriously embarrassed by any delay. He had full knowledge of all defects or variances in said deed now complained of. With that knowledge the defendant took said deed from the depositary, and paid to him the balance of the considera-

tion therefor, in accordance with said award.  Before taking
it, he, or rather his attorney, pointed out to the depositary
the defects complained of, and declared that the deed did not
comply with the award.   The attorney then went and en-
deavored to find Porter, without success; and just before the
bank closed he returned to Beyer's office, "and told him that
we would have to take the deed, but that we did not accept
it as a compliance with the contract,"—pointing out his ob-
jections.  He explained the reasons why they had to take it
and would take it for what it was worth.   "Beyer's reply
was, urging us to take it, because he was disgusted with the
whole transaction, and did not want anything more to do
with it."   The defendant shortly afterwards, apparently in
pursuance of this conversation, procured to be paid the exact
amount called for by the arbitration, and took the deed.
The court held the defendant entitled to recover as damages
several items of expense and loss resulting from Porter's con-
tinued refusal to comply with the contract of December 29,
1888, and from the insufficiency of the said deed to satisfy
its terms, and set off such sums against the amount found due
upon the mortgage.   From this portion of the judgment the
plaintiff appeals.

For the appellant there were briefs by *Greene, Fairchild,
North & Parker,* and oral argument by *B. L. Parker.*

*Arthur C. Neville,* for the respondents.


DODGE, J.  By reason of the view we have taken as to
the effect of the delivery by Porter of a deed, and the accept-
ance thereof by the defendant, most of the questions dis-
cussed by counsel on this appeal are rendered immaterial.
We are unable to avoid the conviction that that transaction
must be deemed a final and conclusive settlement and ad-
justment of all the disputes arising under the contract of
sale.  There is not the slightest doubt that the paper was exe-
cuted and left in the custody of the arbitrator, Beyer, as the

only thing which Porter was willing to do as a compliance with that contract or with the award. There is no particle of evidence that Beyer was anything but a custodian to hold that deed until the sum of money specified by his award was paid, and then to deliver it as full discharge of Porter's obligation under the former contract, according to his contention. This being the situation, defendant accepted that deed and paid his money, with the circumstances of protest more fully set forth in the statement of facts herewith. Defendant had no right to that deed except upon the terms assented to by Porter. His right, if Porter refused to carry out the agreement which they had made, was to bring action against him, either for specific performance or for damages resulting from the breach. He had no other alternative to the acceptance of the deed on the terms which Porter had imposed. *Perin v. Cathcart* (Iowa), 89 N. W. 12, 13; *Keck v. Hotel Owners' M. F. Ins. Co.* 89 Iowa, 200, 56 N. W. 438; *Woodford v. Marshall,* 72 Wis. 129, 133, 39 N. W. 376. His act in accepting it is unambiguous, and its legal effect cannot be averted by protesting that he will not be bound thereby. *Rutledge v. Price Co.* 66 Wis. 35, 27 N. W. 819. Of course, Porter might have consented to delivery of the deed upon the terms contended for by defendant; and if, after a protest to himself such as *Cook's* attorney made to Beyer, Porter had still delivered the deed, there might well have been a question of fact whether such act did not evince an assent to its delivery, not in full settlement but subject to adjustment of the still disputed rights. But no one except Porter, or an agent authorized by him, could make such assent. This rule rests on the most elementary principles of contract law, namely, that a proposition must be accepted exactly as it is made, or not at all, unless the offerer assents to modification. One to whom an offer is made cannot take to himself the benefits thereof without becoming bound to all the terms upon which it is made. No protest that he will not be bound can avail

him, except as it may, with surrounding acts and circumstances, serve as evidence that the other assented to some modification. To have such effect the protest must, therefore, be made to one having authority to modify; otherwise, of course, his conduct could be of no significance. When and if *Cook* declared that he would take the deed only as conveyance as far as it went, and would reserve his rights upon the original contract, Porter had the right to respond that he would not deliver it at all. Of this right he has been deprived, and in it he cannot be reinstated after defendant has conveyed away the lands to others, so that we need not discuss any right to rescind by the latter upon re-establishing the *status quo*. Indeed, no effort to that end has been made; nor, probably, could it now be done, in the light of the well-established rules of law most recently considered in *Bostwick v. Mut. L. Ins. Co.* 89 N. W. 538.[1] The situation differs radically from that presented in certain cases cited by respondent,—as, for example, in *Ketchum v. Wells,* 19 Wis. 25, where a purchaser, having ignorantly accepted at a distance, and removed to his factory, certain defective stave bolts, was held not to waive his right to damages for the defects by using them after discovery, when serious damage would have resulted from stoppage of his mill by refusal to use them; and, for further example, where one pays unlawful demand for money to release his goods or person. *Scholey v. Mumford,* 60 N. Y. 498. Here, the rights of the parties being in dispute, plaintiff offered the conveyance only on condition that it settle that dispute, with full knowledge and understanding by both parties as to how far it varied from the rights asserted by *Cook*. Its acceptance or rejection on those terms was matter of new contract, and defendant's adoption of the one course or the other can be avoided for

[1] A rehearing was granted in this case June 19, 1902, and it has not yet been finally determined or reported.—REP.

duress or coercion only when it is such as to override the will of the consenting party.   The fact that he must decide between serious inconvenience, embarrassment, or loss as the result of electing either course is not enough.   *City Nat. Bank v. Kusworm,* 91 Wis. 166, 64 N. W. 843; *Wolff v. Bluhm,* 95 Wis. 257, 70 N. W. 73; *Rochester M. T. Works v. Weiss,* 108 Wis. 545, 84 N. W. 866.   The conclusion is irresistible that *Cook,* by taking Porter's deed, has accepted full satisfaction of the contract between them, and has no rights of action, except upon the deed itself.   That being without warranty, and all defects in title to lands therein described having been fully known to *Cook* when he accepted it, he has no right of action thereon.   The allowance of anything upon the counterclaim was erroneous, and must be eliminated from the judgment.

*By the Court.*—The judgment is modified as of its date by substituting the sum of $1,468.34 in place of the sum of $340.32 as the amount due upon the mortgage above all payments and setoffs, and to be paid in redemption or realized upon sale; and, as so modified, the judgment is affirmed. Appellant to recover costs in this court.