[No. 32803. Department Two. January 3, 1955.]

MARGUERITE SNYDER, *Appellant*, v. OLGA ROBERTS, *Respondent.*[1]

[1] Reported in 278 P. (2d) 348.

*Elliott & Schneider,* for appellant.

*Geo. Olson* and *Frank C. Trunk,* for respondent.

HILL, J.—This is an action by a grantor against her grantee for damages in the amount of eight thousand dollars, for failure to comply with the following covenant contained in the deed:

"In consideration of the sale of this property and for other valuable consideration, the grantee, for her heirs and assigns, agrees to construct and maintain a good and sufficient wall on the grantee's above described property, running along the south property line separating the properties of the grantor and grantee, and to restore the grantor's property to the original level. This covenant shall run with the land. The purpose of this wall is to give sufficient lateral support to grantor's property adjoining on the south, and is to be built within a reasonable time."

The defense is that grantee never agreed to the insertion of the covenant in the deed; that it was no part of the con-

tract for the purchase of the property; and that, if the acceptance of the deed under protest implied a promise to perform the covenant, there was no consideration for that promise.

We shall refer to the parties throughout this opinion as grantor and grantee, although we are aware that they did not occupy that relationship until the execution and delivery of the deed.

It is not disputed that the parties entered into an earnest-money agreement March 18, 1946, whereby the grantor agreed to sell and the grantee agreed to buy the north 120 feet of a 300-foot tract for thirty-six hundred dollars. A check for eighteen hundred dollars was delivered to the grantor's agent at that time, and on April 19, 1946, the grantee gave the grantor's agent a check for the balance of the purchase price. There can be no question that the grantee thereby met all of the requirements of the earnest-money agreement and was entitled to a warranty deed in accordance with its terms.

Just when the grantee entered upon the property she was purchasing and commenced bulldozing, excavating, and leveling preparatory to building a residence is in dispute, but we shall assume that it was prior to the making of the final payment on the property. It is grantor's contention that grantee removed some two hundred cubic yards of grantor's property and left her property without adequate lateral support. Grantor's agent had prepared a deed which grantor refused to execute until the above-quoted covenant was inserted therein. She directed her agent to deliver the deed to her attorney, who added the covenant. The grantee objected to the inclusion of the covenant and for some time refused to accept the deed, but the grantor was obdurate and insisted upon its inclusion, and finally, about October 15th, grantee accepted the deed.

Grantor's position is that, by virtue of that covenant, the grantee assumed an obligation to build a wall which at that time would have cost $6,025 (but which, at the time of trial, would have cost $7,145), together with the obligation to

furnish two hundred cubic yards of dirt (which, at the time of trial, would have cost two hundred dollars) to restore grantor's property to the original level. Grantee's failure to build an adequate wall and to restore the two hundred cubic yards of dirt has, grantor contends, damaged her in the amount of $7,345.

The trial court, concluding that there was no consideration for the inclusion of the covenant referred to in the deed and consequently nothing to submit to a jury, dismissed grantor's cause of action and directed that the covenant be deleted from the deed. Grantor appeals, urging three reasons why the judgment of dismissal should be reversed.

Grantor argues that the covenant constituted a modification of the earnest-money agreement and that no additional consideration is required therefor, citing *LaPlante v. Hubbard*, 125 Wash. 621, 217 Pac. 20 (1923). As is made clear therein, the rule of that case is applicable only to the modification of executory contracts. In the instant case, when the grantee made the final payment called for by the earnest-money agreement to grantor's agent, she had fully performed her part of that agreement. She was entitled to performance by the grantor, and the latter could not thereafter impose an additional obligation on the grantee without some new consideration therefor. The rule is well settled that, when a contract has been executed by one of the parties thereto, it cannot be modified except by agreement supported by a new consideration. *Tacoma & Eastern Lbr. Co. v. Field & Co.*, 100 Wash. 79, 170 Pac. 360 (1918); *Stauffer v. Northwestern Mut. Life Ins. Co.*, 184 Wash. 431, 51 P. (2d) 390 (1935); *Hopkins v. Barlin*, 31 Wn. (2d) 260, 270, 196 P. (2d) 347 (1948).

We come now to a consideration of the contention most vigorously stressed by the grantor, *i.e.*, that the consideration for the covenant consisted of the relinquishment of her right of action for damages for trespass and removal of lateral support arising from the alleged excavation made by the grantee upon grantor's property.

■ It is well settled that the surrender of or forbearance from asserting a legal claim on which there exists a reasonable possibility of recovery is sufficient consideration for a promise. *Nicholson v. Neary*, 77 Wash. 294, 137 Pac. 492 (1914); *Sweeny v. Sweeny Inv. Co.*, 199 Wash. 135, 90 P. (2d) 716, 139 A. L. R. 847 (1939); *Opitz v. Hayden*, 17 Wn. (2d) 347, 135 P. (2d) 819 (1943); 1 Restatement, Contracts, 83, § 76. However, before any act or promise (including forbearance) can constitute a consideration, it must be bargained for and given in exchange for the promise. 1 Restatement, Contracts, 80, § 75.

An annotation in 74 A. L. R. 293 states that it is well settled that mere forbearance to exercise a legal right, without any request to forbear or circumstances from which an agreement to forbear may be implied, is not a consideration which will support a promise. This statement is followed by a discussion of three categories of cases: (1) those holding that to constitute sufficient consideration for a promise, there must be a request for forbearance and an agreement to forbear; (2) those holding that where there is a request to forbear and actual forbearance, there is a consideration for a promise although there may have been no agreement to forbear, this on the theory that a unilateral contract, when established by performance, becomes as binding as a bilateral contract and hence an agreement to forbear is unnecessary; and (3) those holding that where there is a request for forbearance and actual forbearance, the agreement to forbear may be implied under certain circumstances and conditions, this on the theory that actual forbearance is evidence of an agreement to forbear and, when viewed in connection with other facts and circumstances relating to the promise, may establish an implied agreement to forbear which will be deemed to constitute sufficient consideration for the promise. The cases in categories (2) and (3) achieve the same result on different theories. We find no Washington cases in either category, but in no event could the rule applicable to either category be applied to the instant case.

The testimony discloses that, after consulting her attor-

ney, the grantor advised the grantee that the bulldozers had cut into grantor's property, but refused to discuss the matter further. Thereafter, all negotiations concerning the insertion of the covenant in the deed were conducted through grantor's attorney. The testimony does not disclose the substance of the conversations between grantee and grantor's attorney, other than that the grantee was informed that the grantor would not sign the deed unless such a clause was inserted. Grantee and her son testified that she protested against the insertion of the covenant. Grantor's attorney had no certain recollection, but conceded that grantee may have made a mild protest. We assume, as we must when a case is taken from a jury and dismissed, that the jury would have believed his testimony rather than that of grantee and her son, but there is nothing to indicate any meeting of minds on the inclusion of the covenant in the deed.

■ We have also considered, as though it were in evidence, a letter from grantor's attorney to the grantee which the trial court refused to admit, but it adds nothing to the evidence already before the court and has no bearing upon this issue. It is agreed that grantee was informed of facts which would have given grantor a right of action for trespass, but nowhere in the record is there any evidence that grantor asserted such a legal right or indicated to the grantee that if the covenant was not accepted such a right would be asserted. There is no scintilla of evidence that the grantee ever asked the grantor to forbear bringing an action for trespass; in fact, all that grantee ever asked of grantor was a deed in conformity with the earnest-money agreement. In the absence of evidence that an action for trespass was ever contemplated or considered by the parties, there is nothing from which an agreement to forbear from asserting such a right could be implied.

■ The testimony discloses that the only claim or right asserted by the grantor was her "right" to refuse to perform the earnest-money agreement by failing to execute a deed, and the only conclusion that can be drawn therefrom is that the grantee agreed to accept the deed with the covenant in

it, not to avoid any legal liability arising from the alleged invasion of grantor's property rights, but rather to obtain performance of an existing legal obligation, *i.e.*, to obtain the deed to which she was entitled under the earnest-money agreement. This, of course, does not constitute sufficient consideration. *Harris v. Morgensen*, 31 Wn. (2d) 228, 196 P. (2d) 317 (1948).

We come now to a consideration of the plaintiff-grantor's contention that, irrespective of whether there actually was any consideration for the covenant which is the basis of her suit, and irrespective of whether the defendant-grantee ever agreed to build such a wall as the covenant describes, the presence of the covenant in the deed accepted and recorded by the grantee conclusively establishes, under the doctrine of merger, that it was part of the contract of the parties.

The doctrine of merger is founded upon the privilege, which parties always possess, of changing their contract obligations by further agreements prior to performance. The execution, delivery, and acceptance of a deed varying from the terms of the antecedent contract indicates an amendment of the original contract, and generally the rights of the parties are fixed by their expressions as contained in the deed. *City of Bend v. Title & Trust Co.*, 134 Ore. 119, 289 Pac. 1044, 84 A. L. R. 1001 (1930); *Miller v. Kemp*, 157 Va. 178, 160 S. E. 203, 84 A. L. R. 980 (1931); *Duncan v. McAdams*, 222 Ark. 143, 257 S. W. (2d) 568 (1953).

We have held that the general rule is that a deed made in full execution of a contract of sale of land merges the provisions of the contract therein, and that this rule extends to and includes all prior negotiations and agreements leading up to the execution of the deed. *Davis v. Lee*, 52 Wash. 330, 100 Pac. 752 (1909).

However, in the present case the application of the doctrine of merger and a holding that the covenant in question represents the contract of the parties seem to us a perversion of that doctrine and an unjust result. Not only was

there no consideration for the covenant in the deed, but there never was any agreement that the grantee would build any such wall or that any such covenant should be placed in the deed. (No attempt was made to invoke the parol evidence rule, and all the facts are before us.) The plaintiff-grantor sues not for trespass but for damages for the breach of the covenant, which damages could be not only far in excess of any damage occasioned by the trespass but several times the value of the property trespassed upon and more than double the amount the plaintiff-grantor received from the sale of the 120-foot by 300-foot tract purchased from her by the defendant-grantee. (We would note in passing that the defendant-grantee indicated that she would invoke the statute of limitations as a defense against any action to recover for her trespass, so plaintiff-grantor may well have considered an action on the covenant the only remedy open to her.)

Intrigued by the problem presented, we have made an extensive, intensive, and, we must confess, frustrating exploration of the authorities, to discover some way (on solid ground) around what Kent, C. J., in *Howes v. Barker*, 3 Johnson (N. Y.) 506, 3 Am. Dec. 526 (1808), called "the impediment of the deed," which he was unable to "surmount."

There are many exceptions to the doctrine of merger, but for the most part they are applied in cases where either the grantor or the grantee is attempting to enforce against the other, stipulations in the contract which are not contained in, not performed by, and not inconsistent with the deed and which are held to be collateral to or independent of the obligation to convey. The following, from *Morris v. Whitcher*, 20 N. Y. 41, 47 (1859), is widely quoted:

"In all cases then, where there are stipulations in a preliminary contract for the sale of land, of which the conveyance itself is not a performance, the true question must be whether the parties have intentionally surrendered those stipulations. The evidence of that intention may exist in or out of the deed. *If plainly expressed in the very terms of the deed, the evidence will be decisive.* If not so ex-

pressed, the question is open to other evidence, and I think in the absence of all proof there is no presumption that either party, in giving or accepting a conveyance, intends to give up the benefit of covenants of which the conveyance is not a performance or satisfaction." (Italics ours.) (Quoted by this court in *Davis v. Lee, supra.*)

See annotations, "Deed as superseding, or merging, provisions of antecedent contract imposing obligations *upon the vendor*," 84 A. L. R. 1008, and "Deed as superseding or merging obligations imposed by antecedent contract *upon vendee*," 84 A. L. R. 1041.

The exceptions referred to have no bearing upon our immediate problem, as they deal with stipulations in the antecedent contract not covered by and not inconsistent with the terms of the deed; whereas we are concerned with a stipulation or covenant in a deed which never was a part of the antecedent contract.

Another phase of the problem of merger illustrative of the binding effect of the provisions of a deed on the grantee is represented by those cases dealing with the obligation of grantees to pay mortgages or other encumbrances. If, by the terms of his deed, a grantee takes subject to certain encumbrances whereas by the terms of the antecedent contract he assumed and·agreed to pay them, it is held that the contract of assumption

". . . is enforcible, that it is not merged in the deed, and is not contradictory but independent of it. It is merely an additional agreement, and not at variance with the terms of the deed." *Ordway v. Downey,* 18 Wash. 412, 414, 51 Pac. 1047, 52 Pac. 228 (1898).

*Bollong v. Corman,* 117 Wash. 336, 201 Pac. 297 (1921); *Hargis v. Hargis,* 160 Wash. 594, 295 Pac. 742 (1931).

But if by the terms of the deed the grantee "assumes and agrees to pay," even though by the terms of the antecedent contract he was only to take subject to the encumbrances, the antecedent contract is, in the absence of fraud or mutual mistake, held to be merged in the deed accepted by the grantee. *Moore v. Parker,* 83 Wash. 399, 145 Pac. 440 (1915). And of course that would be true where there was

no evidence as to the terms of the antecedent contract. *Brewer v. Rosenbaum,* 183 Wash. 218, 48 P. (2d) 566 (1935).

The only Washington case we have found in which a grantee in a deed in which it was stated that he assumed and agreed to pay an encumbrance was held not to be liable thereon is the one last cited, where two grantees were held liable on the encumbrance because *they had accepted the deed* with the assumption clause in it, and a third was held not to be liable because the facts established by the record *did not show an acceptance of the deed by him.*

■ We have pursued several routes which in the exploratory stages seemed to offer a way around the "impediment of the deed" but which ultimately were found to be impassable if the grantee has accepted the deed. The deed being unilateral, the grantee is bound not by signing the instrument but by accepting it. The easy and obvious route, if open, would be to reform the deed by deleting the covenant or stipulation in question. Since all the evidence as to the antecedent contract and the actions of the parties herein had been admitted, the trial court concluded that the defendant-grantee was entitled to that relief (although, as we read the record, she had not asked for it), and the deed was so reformed by the judgment.

Peculiarly, in their briefs neither appellant nor respondent discusses the subject of reformation or mentions that part of the trial court's judgment striking and deleting the covenant from the deed. The defendant-grantee did not ask for the equitable relief of reformation, but apparently relied solely upon the defense of lack of consideration, and demanded and secured a jury trial on the theory that this is an action at law. The usual prerequisites of relief by reformation, mutual mistake, accident, or fraud are not in the case, and the trial court struck from the findings the statement that the defendant-grantee was acting under business compulsion in accepting the deed (if acceptance under business compulsion be a ground for reformation, which seems questionable). See *Porter v. Cook,* 114 Wis. 60, 89 N. W. 823 (1902); *Wilson v. Wilson,* 115 Mo. App.

641, 92 S. W. 145 (1906); *Barger v. Healy*, 276 Mo. 145, 207 S. W. 499 (1918). These cases will be hereinafter discussed.

Even if the findings of fact made by the trial court warranted a reformation, we would not be willing to dispose of the case on that basis without being satisfied that the plaintiff-grantor had had an adequate opportunity to meet the issue of reformation at the trial court level. If apprised in the trial court that a reformation was sought, she might have raised defenses thereto, including laches extending beyond the usually applicable statute of limitations, as the defendant-grantee received the deed on October 15, 1946, with full knowledge of the covenant in question, and took no steps looking toward reformation unless it was by the answer she served on March 2, 1953, praying

". . . that plaintiff's action be dismissed, and that plaintiff take nothing, and for such other relief as the Court may deem just, meet and equitable in the premises,"

the sufficiency of which to constitute a request for reformation we question. In the intervening period the statute of limitations had run on plaintiff-grantor's right to sue for trespass.

While the doctrine of merger, if applicable, would by-pass the defense of lack of consideration for the covenant, there could be no merger unless the deed was accepted by the grantee. The distinction between the acceptance of a deed as a conveyance of property (as to which there can be no doubt in this case) and its acceptance as a satisfaction of the contract is well expressed in *Slocum v. Bracy*, 55 Minn. 249, 253, 56 N. W. 826 (1893), where it is said that there is

". . . a very clear distinction (apparently not fully kept in mind by counsel) between plaintiffs merely accepting the instrument as a conveyance and their accepting it as performance of defendants' contract."

However, most of the cases in which this distinction in the character of the acceptance is discussed are cases in which the plaintiff was attempting to enforce some provision of an antecedent contract not inconsistent with the

deed itself, and the cases achieve the same result as those earlier referred to in which it is held that collateral or independent stipulations of an antecedent contract not inconsistent with the deed could be enforced if that was the intention of the parties.

However, if we apply the quoted language from *Slocum v. Bracy, supra,* to the present case, the next query is, What is the remedy of the defendant-grantee if she accepted the deed only as a conveyance of the land and not as a performance of the contract? It would seem that in such a situation she should ask for specific performance of the contract· by the terms of which she was to receive a warranty deed free of encumbrances except easements and restrictions of record.

Whether by reformation or specific performance, the same result would be reached, *i.e.,* a deed without the stipulation or covenant on which this action is based. But the defendant-grantee is asking neither, and, in any event, the plaintiff-grantor would be entitled to meet the issue of specific performance as well as that of reformation at the trial court level.

Apart from reformation and specific performance, which are affirmative remedies and not available in this court at this time, if the defendant-grantee has any defense as a matter of law to the plaintiff-grantor's claim of merger, that defense must be that the covenant in the deed was forced upon her and that, even though she received the deed, recorded it, and holds under it, she is not bound by the covenant on which suit is brought. Such a defense raises a number of interesting subsidiary problems peculiar to the facts of this case: (a) To what extent and under what conditions can a grantee accept the benefits of title and possession under a deed and still reject the burdens imposed by it? (b) What constitutes a *prima facie* showing that a deed was accepted as written? (c) How can such a *prima facie* case be met? (d) Is there any obligation on the person who accepts a deed known not to be in accordance with the agreement of the parties to have it reformed

or to have the agreement specifically enforced within a reasonable time? (e) What is the effect of an acceptance under protest and what are the remedies of the grantee in such a situation?

We will consider only the last of these questions, as it seems clear that unless the defendant-grantee's protest reserved and preserved to her the right to challenge the enforcement of the covenant here sued upon, she has no defense as a matter of law to plaintiff-grantor's claim of merger.

A note in 31 L. R. A. (N.S.) 461 says:

"Where the vendor tenders a deed as a full compliance with his executory contract to convey, the fact that the deed does not contain the covenants of title contracted for in the executory contract, and that the vendee for that reason protested against accepting it and even asserted that he would not accept it as in full compliance with the contract, does not prevent the extinguishment of the contract, if the deed is finally accepted by the vendee, *even though under protest or reservation*, where the vendor insists that the tender is in full performance of his executory contract." (Italics ours.)

And in 55 Am. Jur. 756, Vendor and Purchaser, § 327, it is said:

"If the deed is tendered by the vendor as a full performance of the contract it is immaterial that the purchaser protested against accepting it as such."

The cases in point are relatively few and will be discussed somewhat at length. Those cited in support of the conclusion in the note quoted from 31 L. R. A. (N. S.) are *Bull v. Willard*, 9 Barb. (N. Y.) 641 (1850), and *Porter v. Cook, supra*.

In *Bull v. Willard, supra*, there was a contract covering the sale of 282 acres for $846.45, payable one hundred dollars down and the balance in six annual payments. Seventeen acres of the 282 had been sold for taxes. By the contract, the seller covenanted and agreed to redeem the portion that had been sold for taxes, and if it was redeemed by the vendee, the amount paid by him for such redemption was

to apply on the contract. The entire $846.45 having been paid by the purchaser to the seller, the purchaser demanded a deed to the entire 282 acres but announced that he would not accept the deed in full performance of the covenants of the contract but instead would receive it as part performance thereof and would hold the seller liable for the value of the land that had been sold for taxes. After the deed was delivered to him, the purchaser-grantee sued on the covenant in the contract. The action was dismissed, it being held that, while the seller was legally bound to redeem the property, the purchaser was not bound to pay for that part of the land nor to take a deed including it, and, having voluntarily paid for the seventeen acres as well as for the rest of the land and having demanded and received a deed for the whole, the purchaser could not maintain an action on the contract, his only remedy being upon the covenant in his deed. (The court commented: "The deed contained a covenant of warranty, which would have given the plaintiff a remedy in case of eviction. I think after he accepted the deed, that was his only remedy.")

In *Porter v. Cook, supra,* the seller had agreed to convey for one dollar an acre, certain lands he had received from an estate. The seller was willing to give a quitclaim deed to all the land he had received from the estate, but the purchaser insisted that he was entitled to a warranty deed or a deed without warranty accompanied by an abstract showing clear title. The seller finally left a quitclaim deed with a third party, covering all the land received from the estate, that deed to be delivered to the purchaser upon payment of one dollar an acre for all the land described therein, whereupon the grantor left for the then-remote wilds of the Pacific coast. The grantor had already sold some of the land described in the deed; as to eighty acres he had no title whatever; and title to 120 acres was "obscured by tax liens." The purchaser, relying upon his agreement with the seller, had contracted to sell certain of the land at an advanced price and was going to be seriously embarrassed by any delay in securing title to the land so sold. He pointed out to the third party holding the deed that the deed con-

tained defects and did not comply with the terms of an award by an arbitrator to whom the seller and the purchaser had submitted their differences. The party holding the deed refused to deliver it until payment of one dollar an acre was made for all the land described therein. The purchaser finally said that, while he would have to take the deed, he would not accept it as a compliance with the contract or the arbitrator's award. However, he paid the exact amount called for and took the deed.

The court held that the purchaser was not entitled to damages from the seller, as the third party holding the deed had no authority other than to deliver the deed if and when the amount demanded by the seller was paid; that the purchaser did not have to accept the deed and could have sued for specific performance or for damages for the breach of contract; that he could not accept the deed except on the terms which the seller had imposed, and the act of accepting it was unambiguous and "its legal effect cannot be averted by protesting that he will not be bound thereby."

A more recent case is *Barger v. Healy, supra.* There the vendor had agreed to sell all his " 'right, title and interest' " in all the land he owned in three different townships in Iron county, Missouri, one half of the selling price to be paid in cash, one fourth to be paid in three months and one fourth within twelve months, the deferred payments to be secured by a deed of trust securing purchase money notes and conveyance to be by warranty deed in due form. This contract was prepared in the office of the vendor, in St. Louis. The purchaser asked the vendor to send the deeds and deed of trust to the Bank of Arcadia Valley, where the purchaser would complete the transaction. The deed sent was a quitclaim instead of a warranty deed, and it reserved the mineral rights to the seller and his heirs. The purchaser made a telephonic demand upon the vendor that he execute a warranty deed and include therein the mineral rights. This the vendor refused to do.

In reliance upon the contract, the purchaser had agreed to sell the timber on the land to third parties.

The purchaser paid half the purchase price and executed the trust deeds to secure the notes for the other half, but stated to the bank that he was accepting the deeds only under protest and only because he had to comply with his contract for the sale of the timber, and that he did not consider the deeds tendered to be a compliance with the contract and would hold the vendor to strict compliance with the contract.

The vendor was again personally notified by long distance telephone that the deeds were not in compliance with the contract and that the purchaser would hold him to a subsequent compliance with the contract. The vendor conceded that he had refused to execute the deeds requested by the purchaser, and stated that he had informed the purchaser that, if he did not want to accept the deeds as tendered, he could return them.

The deeds were recorded by the purchaser, and he immediately thereafter sued for specific performance of the contract. The supreme court of Missouri held that the action should have been dismissed, stating that the acceptance of the deeds by the purchaser was

" . . . a complete execution of the contract to convey and that it is merged into the deeds which bespeak their final agreements, and whatever their rights are must be found in their covenants." (p. 157.)

The case most favorable to the defendant-grantee in the present case which we have been able to find and which most nearly fits the fact pattern of the present case, is *Wilson v. Wilson, supra.* There, by contract dated October 31, 1901, the seller agreed to convey his 315-acre farm for ten thousand five hundred dollars, the purchaser to assume an encumbrance of four thousand dollars (secured by two trust deeds, one for thirty-five hundred dollars and the other for five hundred dollars), and to deliver to the seller a stock of general merchandise for the balance of the purchase price, which merchandise and fixtures were to be taken at "first cost"; the goods to be inventoried commencing October 31, 1901, and possession of the farm to be given January 1, 1902.

The goods were inventoried and found to be of the value of $7,266.77, or $766.77 in excess of the sixty-five hundred dollars needed to complete the purchase price. The seller of the farm took immediate possession of the merchandise and continued to operate the retail store, which, prior to that time, had been operated by the purchaser of the farm. The seller of the farm at various times made payments to the purchaser on account of the excess in the value of the goods over the purchase price of the land and extinguished that liability save as to two items, one of which was the real subject of dispute in the suit.

There was in fact a third deed of trust, securing $366.67, representing the commission of the loan agents for the procurement of the first loan of thirty-five hundred dollars. This trust deed was not referred to in the contract; however, in the deed which the seller of the farm tendered some time after he had taken possession of the merchandise and the store, the following provision was inserted: " 'This deed is made subject to an incumbrance of four thousand dollars and unpaid commission on said loan.' " The purchaser for a long time refused to accept the deed because of the reference to the unpaid commission, claiming that it was at variance with the agreement expressed in the contract. The dispute continued for some months, and finally the purchaser, "feeling compelled to take what he could get, in order to avoid the risk of greater loss, accepted the deed under protest." He paid the commission loan, discharged the encumbrance, and sold the land.

The action, although in form assumpsit to recover the unpaid portion of the $766.77 by which the inventoried value of the stock of merchandise exceeded the sixty-five-hundred-dollar value placed upon it by the contract, was in fact, the court found, for the recovery of the amount paid in satisfaction of the commission loan. It was the defendant's position that the contract was finally executed by the delivery and acceptance of the deed and became extinguished by merger into the latter instrument, which by its express terms imposed upon the plaintiff the burden

of paying the commission loan. The plaintiff secured a verdict against the defendant and a judgment on the verdict, and the judgment was affirmed by the Kansas City court of appeals. That court said:

"It would be a perversion of the doctrine of merger and require an interpretation thereof not sustained by any of the authorities, to which we have been cited, to hold it applicable in this case.

"When the deed was tendered, defendant was in full enjoyment of the fruits of the contract. Plaintiff had done everything required of him and stood with extended hand waiting for his pay. Defendant, secure in the possession of both land and goods, with everything to gain and nothing to lose, sought to gain advantage from his fortunate position by imposing terms outside the contract. He thereby committed a breach of the contract and put himself in the wrong. The concession that the thinks [*sic*] he wrung from plaintiff under such hard conditions must fall for lack of consideration, if for no other reason. The extent of his obligation became fixed by plaintiff's performance and could not be lessened without a new consideration. When a contract is fully performed by one of the parties, an offer of part performance by the other is no consideration for the waiver of full performance."

While the language used is expressive and in a measure fits the instant case, we find no other support for the position taken except in an Ohio case hereinafter referred to in an addendum. The exact basis of the decision is difficult to determine, but emphasis is placed upon the fact that the acceptance of the deed did not complete the performance of the contract, and that the amount due for the merchandise had yet to be paid.

It will be noted that the case of *Barger v. Healy, supra,* is a more recent one from the same state, decided not by an intermediate appellate court, as was the *Wilson* case, but by the supreme court of that state. Nor was the *Wilson* case overlooked in *Barger v. Healy*, but is there cited, as it is in many other cases, as authority for the proposition that

". . . a contract between the vender and vendee, relating to the executory acts necessary to complete the sale of real estate, are merged in the deed, the acceptance

of which completes the performance and is conclusive evidence of the real contract between the parties." *Barger v. Healy,* 276 Mo. 145, 153, 207 S. W. 499.

A still later discussion and approval by the supreme court of Missouri of the rule laid down in *Barger v. Healy, supra,* is found in *State ex rel. Locke v. Trimble,* (Mo.) 298 S. W. 782, 785 (1927), where it is said:

"There, the prior written contract provided that Healy should convey the land to Barger by warranty deed 'in due form of law,' and clear of incumbrance. Contemporaneously with the delivery of such deed, Barger was to pay one-half of the purchase price in cash, and give his notes for the remainder, securing their payment by deed of trust upon the land. Healy tendered a deed, which, in substance, was a quitclaim, and wherein he reserved to himself, and his heirs the mineral rights in the land. Barger objected because the deed did not conform to the term of the contract. Healy refused to give the form of the deed specified in the contract, or to give any other than the one tendered. Thereupon Barger yielded, took the deed, paying the cash part of the purchase price, and delivering his notes and deed of trust for the remainder. The suit afterward brought was for specific performance of the contract, and the plaintiff was denied relief upon the ground that the contract was merged in the deed accepted by Barger. *The terms of the deed were plainly inconsistent with the terms of the contract, and any other was refused. Barger was given his choice of accepting the deed or getting none at all. Barger accepted the deed.* In that contract there was no requirement upon either party to do any act at a later time for the effectuation of complete performance of the contract. The substance of the holding in the Barger case was that when Barger, with full knowledge of the facts, saw fit to accept the deed as he did, he was, as a matter of law, accepting it as a performance of the contract." (Italics ours.)

It cannot be held, as a matter of law, that defendant-grantee had a defense to the claim of merger based upon her acceptance of the deed under protest. While the trial court was correct in finding that there actually was no consideration for the covenant sued upon, it erred in disregarding the claim of merger and in taking the case from the jury, and

erred further in decreeing a reformation of the deed when the issue of the right to reformation had not been raised.

In our opinion, there is a close question as to whether the plaintiff-grantor was or was not entitled to prevail, as a matter of law, on the issues raised on the theory of merger, leaving nothing to the jury except the amount of damages. However, in consequence of the many facets of this case not presented to either the trial court or this court, we decline to so hold at this time.

The plaintiff-grantor (appellant) urges that not only was she entitled to a judgment as a matter of law but that, since the evidence of the defendant-grantee as to the cost of a wall was for one which could not accomplish the purpose of the stipulation or covenant in the deed, there was no evidence except that of plaintiff-grantor's experts as to the cost of restoring her property to its original level, i.e., two hundred dollars, and to build a wall to keep it there, i.e., $7,145, and that, consequently, she was entitled to a judgment for $7,345.

There is merit in her contention as to the state of the evidence if her interpretation of what the stipulation or covenant requires is correct, as to which we express no opinion. However, even had we determined that, as a matter of law, the plaintiff-grantor was entitled to recover, the jury might have believed that such a substantial and costly wall was not necessary. The weight to be given the testimony of the experts was likewise for the jury.

The judgment of dismissal and reformation is reversed, and the case is remanded for a new trial.

### ADDENDUM

Attention is directed to what we have called "the Ohio rule." We find it stated in *Berry v. Cleveland Trust Co.*, 53 Ohio App. 425, 431, 5 N. E. (2d) 702, and summarized in the syllabus by the court as follows (p. 425):

"Where, in pursuance of a written contract to convey certain real estate, a deed is executed and delivered *which contains stipulations to be performed by the grantee that were not a part of the original contract,* the contract is not necessarily executed by or merged in said deed. The rights

of the parties must be determined by a consideration of both instruments and the surrounding circumstances." (Italics ours.)

In that case (a mortgage foreclosure), a personal judgment was sought against Paul F. Berry, the grantee in a deed in which it was stated that the grantee assumed and agreed to pay the mortgage in question. Berry's defense was that his assumption of the mortgage was not part of his agreement with his grantor, and that he had never agreed to assume the mortgage. It was there held that the trial court had erred in refusing to admit in evidence certain letters which set forth the terms under which Berry had agreed to acquire the property.

While the adoption of such a rule would enable us to affirm the trial court and to dispose of the instant case in what would seem to us a very satisfactory manner, we have decided not to adopt the rule as stated, at least at this time. There are several reasons why we do not follow our inclination. First, such a rule should be adopted only after a testing of its propriety by an adversary presentation and a thorough consideration of its consequences, as it would seemingly involve the overruling of certain of our cases relative to the assumption of mortgages by grantees. Second, the *Berry* case is not a decision by the supreme court of Ohio, but by the court of appeals of Lorain county, and has never been approved and followed; in fact, it has not been cited up to the time of the writing of this opinion. Third, the Ohio cases cited in the opinion as supporting the rule there laid down do not, as the following analysis will show, support the rule as enunciated or as applied in the *Berry* case.

Two of the cases cited (*Reid v. Sycks*, 27 Ohio St. 285 (1875); *Metcalf v. Lay*, 16 Ohio L. Abs. 487 (1933)) do no more than hold, in accord with practically all the cases including our own, that an agreement in an antecedent contract by a vendee-grantee to assume and pay a mortgage is not merged in a deed which contains no such assumption clause and the vendee-grantee is liable on the contract stipulation, and that there is no presumption that a party, in giving or accepting a deed, intends to give up the cov-

enants of which the deed is not a performance or satisfaction and which are not inconsistent with the deed.

Two of the cases cited (*Brumbaugh v. Chapman,* 45 Ohio St. 368, 13 N. E. 584 (1887); *Conklin v. Hancock,* 67 Ohio St. 455, 66 N. E. 518 (1903)) have to do with deficiencies in acreage and, in our opinion, do not support the rule announced in the *Berry* case. In *Brumbaugh v. Chapman, supra,* the contract called for the conveyance of a certain described tract of land " 'containing ninety-two 79-100 acres of land,' " at ninety-five dollars an acre, on the following terms:

"$3,000 on April 5, 1874, at which time . . . possession was to be delivered together with a good and sufficient deed; $500 on April 15, 1874, and the balance $5.315 [*sic*] in seven annual payments of $759,28 [*sic*] each, to be secured by notes and a mortgage on the land."

The cash payments were made, the deed was delivered; and the notes and mortgages were given and subsequently paid. The lands conveyed were described in the deed by metes and bounds, and the words " 'containing ninety-two and 79-100 acres of land' " were included.

In 1882, the plaintiff-grantee discovered a claimed shortage of 3.18 acres and sued to recover for the deficiency on the basis of ninety-five dollars an acre. There was a suit on both the contract and the deed. It was held that there was no covenant as to the acreage in the deed and hence no recovery, and that the plaintiff-grantee could not recover on the contract for the familiar reason that

" . . . by the execution of the deed, the contract to sell and convey the land described in it, whether it was for a definite number of acres or not, was, so far as it embraced this particular stipulation, merged in the deed, and, to use the language of the books, became executed by it."

The court did say:

"As a rule the deed does not execute any of the stipulations of the vendee as to the consideration to be paid for the property. Its office is to execute the agreement on the part of the vendor."

The foregoing quotation was used in *Conklin v. Hancock, supra,* but the *Brumbaugh* case was distinguished therein

as having been decided upon the basis that a stipulation for the sale and conveyance of land is executed by the delivery of a deed for the land by the vendor and its acceptance by the vendee as a performance of the stipulation.

In the *Conklin* case, the contract was for the sale of a tract described by metes and bounds,

" ' . . . the above described tract of 266 acres of land (the exact number of acres to be thereafter determined by the survey of a competent surveyor), for the sum of $500 per acre.' "

The survey was made and the tract was found to contain 266 acres. The deed conveyed the tract by a metes and bounds description and as " 'containing 272 53-100 acres' " from which "was excepted 6 53-100 acres, making the tract conveyed, 266 acres" for a consideration of $133,000. The action was brought by the grantee on the covenant of seizin to recover $1,620, being the value of 3.24 acres at $500 an acre, that being the amount of land within the tract used by the state of Ohio for canal purposes. The defense was that $133,000 was the purchase price for the entire tract, and not $500 an acre, and that the value of the 3.24 acres used for canal purposes " 'was almost, if not quite, nothing.' "

The circuit court held that the only evidence that the sale was by the acre was the contract, and that the contract was merged in the deed and therefore was not competent evidence to show that the sale was by the acre. The supreme court of Ohio reversed the decision and permitted recovery on the basis of the generally recognized rule that a deed is only *prima facie* evidence of the consideration, and that the actual consideration may differ in kind or amount from that named in the deed and may be proved by evidence dehors the deed, and that the contract was competent evidence to establish that the sale was for a fixed price per acre.

The purpose of this addendum is to call attention to what the *Berry* case, *supra*, states to be the rule in Ohio, in order

that, in the ultimate determination of this case it may, if necessary, be given further consideration by counsel.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and WEAVER, JJ., concur.